DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court, Juvenile Division, judgment that committed Dwayne E. Wilson, Jr., defendant below and appellant herein, to the legal custody of the Ohio Department of Youth Services (DYS). Prior to that time, the appellant had been adjudicated a delinquent child for committing the crime of rape in violation of R.C.2907.02(A)(1)(b).
 {¶ 2} Appellant assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
"The trial court committed reversible error when it failed to appoint a guardian ad litem in violation of Ohio revised Code Section 2151.281[(a)] and juvenile rule 4[(b)]."
SECOND ASSIGNMENT OF ERROR:
"The trial court committed reversible error when it admitted Dwayne Wilson's confession when the corpus delecti of the offense had not been established before the statement was admitted."
 {¶ 3} On April 13, 2004, a complaint was filed that alleged that the appellant (d/o/b/ 10-28-89) was a delinquent child for having committed the crime of rape (performing fellatio on his seven year old step-brother, E.B. (d/o/b 2-1-97)).
 {¶ 4} At the June 23, 2004 adjudication hearing, M.W., the boys' sister, testified that one day she observed her brothers in the appellant's room and that E.B. was lying on the bed with his pants pulled down and that the appellant was on his knees "licking" his brother's "private" areas or "private parts."[1] M.W. reported the incident to her mother who, in turn, contacted the authorities.
 {¶ 5} Greg Nohe of the Marietta Police Department testified that he interviewed the appellant and that he admitted to placing his mouth on his brother's penis.[2] The trial court heard an audiotape of the appellant's confession in which he admits to briefly performing fellatio on his brother. The court found the appellant guilty of the crime of rape and adjudicated him a delinquent child.
 {¶ 6} At the June 25, 2004 disposition hearing, several witnesses spoke to the appellant's problems over the years including other incidents of a sexual nature (e.g. stealing people's underwear) as well as violent episodes. The trial court also recounted its own experience with the appellant:
 {¶ 7} "I'm obviously aware of Dwayne's cases. I believe I've handled all of them, including the underwear, the criminal damaging, the receiving stolen property, and now the rape here.
 a. * * * {¶ 8} It would appear from everything the court is aware, and from that psychological evaluation, that things are escalating with this child. That, it started out by stealing underwear, and we're now here with a rape.
 {¶ 9} The psychological evaluation states that Dwayne is acting out in antisocial behavior, and it could include lying, stealing, assaultive behavior, and even sexual acting out, and I think we've seen all of that. We've seen the stealing; he has lied different times to the evaluator here, and omitted things; he has been assaultive at home; and we have sexual acting out."
 {¶ 10} In light of these problems, the trial court believed that it was in the child's best interests to commit him to DYS for a minimum period of two years to the maximum age of twenty-one so that he could receive appropriate help. This appeal followed.
 I {¶ 11} Appellant argues in his first assignment of error that the trial court erred by not appointing a guardian ad litem to represent his interests. After our review of the facts and circumstances in the case sub judice, we agree with the appellant.
 {¶ 12} R.C. 2151.281(A)(2) states that a court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child when "[t]he court finds that there is a conflict of interestbetween the child and the child's parent . . ." (Emphasis added.) Similarly, Juv.R. 4(B) requires that a guardian ad litem be appointed to protect the interests of a child whenever the interests of the child and the interests of the parent may conflict.
 {¶ 13} These provisions do not require that an actual conflict of interest be demonstrated. Rather, a showing that the interests "may conflict" will suffice to trigger the need to appoint a guardian ad litem. See In re Spradlin (2000),140 Ohio App.3d 402, 407, 747 N.E.2d 877; In re Sappington (1997),123 Ohio App.3d 448, 453, 704 N.E.2d 339. The failure to appoint a guardian ad litem, when required by R.C. 2151.281(A) and Juv.R. 4(B), constitutes reversible error. In re Spradlin, supra, at 406 In re Sappington, supra, at 452; In re K.J.F., Clark App. No. 2003-CA-41, 2004-Ohio-263, at ¶ 23.
 {¶ 14} The pivotal issue in this case is whether the appointment of a guardian ad litem was required. In light of the particular facts and circumstances involved here, we believe that it was.
 {¶ 15} The perpetrator and the victim are both members of the same family unit. Moreover, as noted at the disposition hearing, the appellant's victims in previous episodes of physical and sexual acting out were also "family members or pseudo family members." This placed the appellant's parents, particularly his mother, in a very awkward position. Appellant's mother testified for the prosecution at the adjudicatory hearing and later recommended, at the disposition hearing, that her son "be placed in DYS" rather than with his grandparents.
 {¶ 16} Appellant's father stated at the disposition hearing that his son "needs somewhere to — and somebody who will work with him to get him to open up and get this problem taken [care] of before it gets worse when he's back out in society." Thus, both parents advocated that appellant be committed to DYS. While both parents expressed a desire that their son receive help, and while we understand the difficult position appellant's parents occupy and that we, of course, believe that appellant's parents truly want to act in the appellant's best interest, it appears that they occupied an adversarial role. This is particularly true for the appellant's mother, who testified against him and is also the victim's step-mother and is married to the victim's father. The fact that a conflict of interest may exist required the appointment of a guardian ad litem.[3]
 {¶ 17} We also point out that our decision is in accord with other cases that involve incestuous rape in which courts have found that a conflict of interest may exist between the parents' concern for the victimized child and their concern for the child that perpetrated the rape. See e.g. In re K.J.F., supra at ¶ 2 ¶¶ 26-27; In re Miller (1997), 119 Ohio App.3d 52, 55-56,694 N.E.2d 500; In re Sargent (Aug. 31, 2001), Licking App. Nos. 00-CA-91 00-CA-92. Like our colleagues in those cases, we decline to adopt any hard and fast rule that requires the appointment of a guardian ad litem in every case. However, the fact that the assailant and the victim are members of the same family should require greater scrutiny for a potential conflict of interest.
 {¶ 18} As we noted above, our decision is not only based on the familial relationship between the appellant and the victim, but also because (1) the appellant's mother testified for the prosecution, (2) that she recommended that appellant be committed to DYS, (3) the appellant's father likewise recommended that he be committed to DYS, and (4) that appellant's family members (or "pseudo" family members) had been victimized by his acting out on prior occasions. All of these factors demonstrate that the interests involved in the case sub judice may conflict. We thus conclude that the trial court should have appointed a guardian ad litem.
 {¶ 19} We note that the appellant's representation by competent counsel does not render this error harmless. R.C.2151.281(A) and Juv.R. 4(B) mandate the appointment of a guardian ad litem, not an attorney. In re K.F.J., supra, at ¶ 31. Further, the task of a guardian ad litem is to investigate the child's situation and ask the court to do what the guardian ad litem believes is in the minor's best interest. In re Howard
(1997), 119 Ohio App.3d 201, 206, 695 N.E.2d 1; also see In reBaby Girl Baxter (1985), 17 Ohio St.3d 229, 232, 479 N.E.2d 257
(dependent child case). An attorney can theoretically take on both responsibilities, but the duties of a lawyer and the duties of a guardian ad litem may also conflict. In re Howard, supra, at 206; In re Dunham (Nov. 7, 1997) Hamilton App. Nos. C-960399 C-960400.
 {¶ 20} In this case, we believe that the responsibilities of the appellant's attorney and his guardian ad litem may have been in conflict. This is particularly true at the disposition hearing when counsel recommended to the court that her client be placed with his grandparents rather than the DYS commitment. Given appellant's previous history, a guardian ad litem may well have believed (as his parents did) that a DYS commitment is in his best interest. On the other hand, a guardian ad litem may have also advocated another route different from these two alternatives. We also point out that no one testified on the appellant's behalf at the adjudicatory hearing and that a guardian ad litem may have served in that capacity as well (whereas his attorney clearly could not). For all these reasons, we are not persuaded that appellant's representation by counsel obviated the need to appoint a guardian ad litem.
 {¶ 21} We acknowledge that trial courts are generally in a better position to weigh the relevant facts and to determine whether a potential conflict of interest exists between a parent and a child. For that reason, a decision to appoint a guardian ad litem should not be reversed absent an abuse of discretion. Inre Sappington, supra, at 453-454; In re Spradlin, supra, at 408. For those reasons previously discussed, we believe that under the facts and circumstances present in the case sub judice, the trial court erred by not appointing a guardian ad litem. Appellant's first assignment of error is thus well taken and is hereby sustained.
 II {¶ 22} Appellant argues in his second assignment of error that the judgment should be reversed because the prosecution failed to establish the corpus delecti of the offense so as to admit his confession into evidence. However, in light of our disposition of the appellant's first assignment of error, we disregard this assignment of error as moot. See App.R. 12(A)(1)(c).
 {¶ 23} Having sustained the first assignment of error, we hereby reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.
Judgment reversed and case remanded for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and that the case be remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.
[1] Elsewhere in the record it appears that M.W. reported the appellant as licking E.B.'s stomach.
[2] Appellant also admitted that he fondled his brother on other occasions.
[3] Our opinion should not be misconstrued as criticism of the child's parents. We have no doubt that they love their son and want what is best for him. Further, our disposition of this appeal should not be construed as a comment on the underlying merits of this case with respect to either the appellant's adjudication or disposition. Rather, our focus rests solely on the propriety of the appointment of a guardian ad litem.