**In re SLIDER.**

[Cite as *In re Slider,* 160 Ohio App.3d 159, 2005-Ohio-1457.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 04CA34.

Decided March 23, 2005.

David H. Bodiker, Ohio Public Defender, and Elizabeth Miller, Assistant State Public Defender, for appellant.

Kevin A. Rings, Washington County Assistant Prosecuting Attorney, for appellee.

KLINE, Judge.

{¶ 1} Joseph Slider appeals the decision of the Washington County Court of Common Pleas, Juvenile Division, finding him delinquent based on kidnapping in violation of R.C. 2152.02(F)(1) and 2905.01(A)(1). Slider contends that the trial court erred when it failed to appoint a guardian ad litem. Because we find that the trial court abused its discretion by failing to appoint a guardian ad litem when a conflict of interest existed between Slider and his legal guardians, we agree. Accordingly, we reverse the judgment of the trial court, vacate the conviction and sentence, and remand this cause for further proceedings consistent with this opinion.

I

{¶ 2} On June 8, 2004, the state filed a complaint alleging that Slider, aged 14, was a delinquent child by having committed abduction and gross sexual imposition in violation of R.C. 2152.02(F)(1), 2905.01(A)(1), and 2907.05(A)(1). However, instead of abduction, the language used in the complaint by the state alleged kidnapping in violation of R.C. 2905.01(A)(4). The state accused Slider of forcibly

restraining the alleged victim in her bedroom for the purpose of engaging in sexual activity against her will. At the adjudicatory hearing, the trial court amended the abduction charge to kidnapping but mistakenly continued to refer to R.C. 2905.01(A)(1) instead of 2905.01(A)(4), the proper statutory section.

{¶ 3} At the time the offense occurred and throughout the delinquency process, Phyllis and Denny Gossett were Slider's legal guardians.[1] Phyllis and Denny are also the parents of the victim. At the detention/shelter-care hearing, the trial court questioned both guardians. When asked about Slider's natural mother, Sabrina Gossett, Phyllis advised the court that "[s]he doesn't have anything to do with [Slider]." Phyllis also informed the court that she and her husband have legal care and custody of Slider because his mother fails to care for him and noted that Sabrina has blocked Phyllis and Denny's phone number from her home telephone. Phyllis told the court that she thought Slider should have an attorney but stated that neither she nor Denny would hire one for Slider and refused to take Slider home with them. Denny told the court that "[t]here's no help" for Slider.

{¶ 4} The trial court found Slider delinquent pursuant to R.C. 2152.02(F)(1) for an offense that if committed by an adult is a violation of R.C. 2905.01(A)(1).[2] At the dispositional hearing, the trial court heard a statement from the victim and a letter composed by Phyllis and Denny. In their statement, Phyllis and Denny requested that the trial court institutionalize Slider. The trial court sentenced Slider to commitment with the Department of Youth Services for a minimum of two years up to a maximum age of 21 years.

{¶ 5} After the trial court sentenced Slider, Phyllis informed the court that she and her husband wished to have their legal custody of Slider terminated. The trial court ordered that temporary custody be placed with Sandra and Ralph Blake, Slider's maternal grandmother and stepgrandfather, after Sabrina advised the court that she agreed and stated that she was unable to act as a temporary custodian because she has three other children.

{¶ 6} Slider appeals and raises the following assignments of error:

"I. The trial court violated Joseph Slider's right to due process by failing to exclude all witnesses in violation of Ohio Rule of Evidence 615, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Ohio Constitution.

---

1. Denny is Slider's maternal grandfather and Phyllis is his stepgrandmother.

2. Again, the correct statute is R.C. 2905.01(A)(4). The trial court also found that the charges of kidnapping and gross sexual imposition are allied offenses of similar import and, therefore, found Slider delinquent only by reason of having violated R.C. 2905.01(A)(1).

"II.    The trial court violated Joseph Slider's right to due process by admitting hearsay evidence in violation of Ohio Rules of Evidence 801 and 802, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Ohio Constitution.

"III.    The trial court violated Joseph Slider's right to due process by admitting character evidence in violation of Ohio Rules of Evidence 401, 402, 403, and 404, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Ohio Constitution.

"IV.    Joseph Slider was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

"V.    The trial court violated Joseph Slider's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution when it adjudicated him delinquent of kidnapping when that finding was against the manifest weight of the evidence.

"VI.    The trial court committed reversible error when it failed to appoint a guardian ad litem for Joseph Slider in violation of Ohio Revised Code Section 2151.281(A) and Juvenile Rule 4(B)."

## II

{¶ 7} Because we find Slider's sixth assignment of error dispositive, we address it first.    Slider argues that the trial court erred when it failed to appoint a guardian ad litem pursuant to R.C. 2151.281(A) and Juv.R. 4(B).    Slider asserts that a conflict of interest existed between him and his guardians because his guardians are the victim's parents, thus triggering the statutory and rule requirements for appointment of a guardian ad litem.    The state contends that the trial court did not abuse its discretion because Slider's natural mother was present at all stages of the delinquency process.

{¶ 8} Both R.C. 2151.281(A) and Juv.R. 4(B) mandate that a juvenile court appoint a guardian ad litem in certain circumstances.    R.C. 2151.281(A) provides:

"The court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

"(1) The child has no parent, guardian, or legal custodian.

"(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian."

Juv.R. 4(B) provides:

"The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

"(1) The child has no parents, guardians, or legal custodian; [or]

"(2) The interests of the child and the interests of the parent may conflict * * *."

{¶ 9} Because these provisions are mandatory, the failure of a court to appoint a guardian ad litem when these provisions require one constitutes reversible error. *In re Howell* (1991), 77 Ohio App.3d 80, 92, 601 N.E.2d 92. The plain language of Juv.R. 4(B) mandates that the possibility that interests "may conflict" suffice for a required appointment of a guardian ad litem. Nevertheless, "the juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child." *In re Sappington* (1997), 123 Ohio App.3d 448, 453–454, 704 N.E.2d 339, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 106 N.E.2d 772. Therefore, an abuse-of-discretion standard applies to the trial court's decision whether to appoint a guardian ad litem. *Sappington* at 454, 704 N.E.2d 339. Thus, the relevant question here is whether the record below "reveals a strong enough possibility of conflict of interest between [the legal guardians] and child to show that the juvenile court abused its discretion" by not appointing a guardian ad litem. Id.

{¶ 10} A juvenile court should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person to protect the interests and rights of the juvenile. *Sappington,* 123 Ohio App.3d at 455, 704 N.E.2d 339. In *Sappington,* the court found it relevant to consider whether counsel represented the juvenile. Id. However, we have held that a juvenile's representation by counsel does not render the failure to appoint a guardian ad litem harmless. *In re Wilson,* Washington App. No. 04CA26, 2004-Ohio-7276, 2004 WL 3090235, at ¶ 19. In so holding, we reasoned that "the task of a guardian ad litem is to investigate the child's situation and ask the court to do what the guardian ad litem believes is in the minor's best interest. *In re Howard* (1997), 119 Ohio App.3d 201, 206, 695 N.E.2d 1; also see, *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 232, 17 OBR 469, 479 N.E.2d 257 (dependent child case). An attorney can theoretically take on both responsibilities, but the duties of a lawyer and the duties of a guardian ad litem may also conflict. *In re Howard,* supra, [119 Ohio App.3d] at 206, 695 N.E.2d 1; *In re Dunham* (Nov. 7, 1997), Hamilton App. Nos. C–960399 and C–960400, 1997 WL 691440."

{¶ 11} Here, Slider did not request a guardian ad litem or object to the trial court's failure to appoint a guardian ad litem. Ordinarily, rights are deemed waived if they are not raised before the trial court and will be enforced upon

appeal only if the error constitutes plain error. *In re Johnson,* Franklin App. No. 03AP–1264, 2004-Ohio-3886, 2004 WL 1631756, citing *Stores Realty Co. v. Cleveland Bd. of Bldg. Stds. & Bldg. Appeals* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629. However, this court has previously reversed a finding of delinquency when the trial court failed to appoint a guardian ad litem or at least inquire further whether a guardian ad litem was necessary, even though an objection was not made. *In re Spradlin* (2000), 140 Ohio App.3d 402, 747 N.E.2d 877. In *Spradlin,* the juvenile did not have counsel, and the conflict of interest between the juvenile and his legal guardian was apparent.

{¶ 12} Here, we find that the trial court abused its discretion when it failed to appoint a guardian ad litem or inquire further into whether a guardian ad litem was necessary. See *Spradlin,* 140 Ohio App.3d at 407, 747 N.E.2d 877. At the time of the adjudicatory and dispositional hearings, Slider's legal guardians were Phyllis and Denny. More than a "strong possibility" of a conflict of interest existed between Slider and his legal guardians. Phyllis and Denny were unwilling to hire an attorney for Slider and refused to take him home with them because they feared for their daughter's safety. At the adjudicatory hearing, Phyllis testified against Slider, and, in a letter read at the dispositional hearing, Phyllis and Denny requested that the trial court institutionalize Slider. All of these actions were against the penal interests of Slider.[3]

{¶ 13} Even without the actions of Phyllis and Denny at the adjudicatory and dispositional hearings, the trial court was on sufficient notice from its dialogue with them at the detention/shelter-care hearing to warrant either appointing a guardian ad litem or inquiring further into whether one was necessary. By that time, Slider's guardians had expressed a clear intention to distance themselves from him, and counsel did not represent him during the hearing. Therefore, the failure to appoint a guardian ad litem, or at least make further inquiry as to its necessity, was an abuse of discretion, even absent a request for a guardian ad litem or an objection to the failure to appoint one.

█ {¶ 14} It is true that Sabrina, Slider's mother, was present at the adjudicatory and dispositional hearings. However, Sabrina did not have legal custody of her son, and the trial court was informed by Phyllis at the detention/shelter-care hearing that Sabrina had had no involvement with him. Therefore, it was an abuse of discretion not to appoint a guardian ad litem even though Slider's natural mother was present at the hearings. This finding is buttressed by the fact that Slider's temporary legal custody was ultimately not placed with Sabrina.

---

3. We are not passing judgment on Phyllis and Denny. Their position in this case is understandable because the victim is their daughter.

{¶ 15} The trial court appointed counsel, who represented Slider at the adjudicatory and dispositional hearings. Nonetheless, appointment of trial counsel does not render the failure to appoint a guardian ad litem harmless error. *Wilson,* supra, 2004-Ohio-7276, at ¶ 19. The trial court did not appoint Slider's attorney in the dual role of trial counsel and guardian ad litem, and, therefore, counsel had no duty to act as Slider's guardian ad litem. See *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841, 673 N.E.2d 217 (an attorney cannot act as both trial counsel and guardian ad litem unless the trial court orders a dual appointment and finds that no conflict exists between those two roles). Accordingly, we sustain Slider's sixth assignment of error.

## III

{¶ 16} Because we find that the trial court erred when it failed to appoint a guardian ad litem, or at least inquire further into whether one was necessary, when a conflict of interest existed between Slider and his legal guardians, we sustain Slider's sixth assignment of error. Because our resolution of Slider's sixth assignment of error renders his other assignments of error moot, we decline to address them. See App.R. 12(A)(1)(c). Accordingly, we sustain Slider's sixth assignment of error and reverse the trial court's judgment, vacate the conviction and sentence, and remand this cause for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

Peter B. Abele, P.J., concurs.

McFarland, J., dissents.

McFarland, Judge, dissenting.

{¶ 17} I respectfully dissent. In my view, the trial court did not abuse its discretion by failing to appoint a guardian ad litem. The record does not convince me that there was a sufficient "strong possibility of conflicting interests" between the child Joseph Slider and his legal guardians, Phyllis and Denny Gossett, or Sabrina Gossett, his biological mother. The single fact that the legal guardians were also the parents of the victim does not in my view necessitate appointment of a guardian ad litem.

{¶ 18} At the detention hearing, the court asked the legal guardians whether the biological mother, Sabrina Gossett, had received notice of the hearing, and they did not know. In that hearing, a probation officer told the court that the legal guardians had said that they felt their home was not a safe environment for him or the victim. Also at the hearing, the alleged delinquent child initially said

that he did not want counsel, and it was Ms. Gossett who stated: "No, he should have an attorney." Last, and most telling, she stated, "I just pray that the court will be able to help him," and Mr. Gossett proclaimed, "I still care * * * and I feel sorry for him."

{¶ 19} These statements do not expressly or implicitly indicate a strong possibility of conflicting interests. In fact, in my opinion, they indicate a genuine concern for the child's well-being. The court acted reasonably after hearing this information by ordering appointed counsel for the child and by placing the alleged delinquent child in secure detention, ensuring his safety and that of the victim.

{¶ 20} The trial court found the child to be a delinquent child after a contested adjudication. The child was represented by appointed counsel, and his biological mother was present for all stages. The matter was passed for disposition.

{¶ 21} At the dispositional hearing, Ms. Gossett read a letter composed by her and her husband, as Mr. Gossett was not present. The relevant portion is as follows: "Joseph's grandfather and myself did and still do love Joseph very much. We only want what is best for him." The majority opinion indicates that Ms. Gossett requested institutionalization for the child; however, the full context of the statement should be analyzed to grasp her true meaning. Ms. Gossett's statement was "He needs to be institutionalized for as long as it takes him to get the help he needs." In this context, it shows a concern for him to get help, which was consistent with her previous statements at the detention hearing.

{¶ 22} During the same hearing, counsel for the child argued for alternative placement with other relatives and recommended community control with anger-management and sexual-relations counseling. She urged the court that if placement with a relative was not acceptable and in lieu of the Ohio Department of Youth Services, it should place the child at Hocking Valley Residential Center.[4] The probation department recommended placement with the Ohio Department of Youth Services. The court sentenced the child to the custody of the Ohio Department of Youth Services and then discussed who would be the temporary custodian while the child was incarcerated.

{¶ 23} The court was advised that Ralph Blake, a stepgrandparent, was willing to accept this role. The majority opinion seems to indicate that the child's mother agreed to a temporary custody placement with Blake while her child was in prison because she had other children. However, I am not persuaded by her words that this is what she meant. The transcript reads as follows:

---

4. Hocking Valley is a less-restrictive placement under the purview of the Ohio Department of Youth Services.

Sabrina Gossett: But I still have rights. You know what I am saying? To see what's going on with him up there and everything else.

The Court: You're still his mother, yeah.

Sabrina Gossett: 'Cause if I can't—I have three girls—

The Court: Un-huh.

Sabrina Gossett: —and if I can't go, if something goes wrong, you know, then they can.

The Court: Right, right. Yeah, my concern is, with the history of this case, he was with another aunt and uncle, and then he went with you—

Sabrina Gossett: That's when I was in the program.

The Court: —okay, and then you were having trouble controlling him, so he went with them, and you've got three other kids?

Sabrina Gossett: I have three little girls.

The Court: Okay, all right.

{¶ 24} This exchange does not indicate a conflict between the child and his mother but rather a sincere concern for someone to look after the child in the event she could not. It also shows that she even recognized that naming her as temporary custodian might not be in this child's best interests. Further, this dialogue was after the court found the child guilty and after it pronounced sentence, conceivably making any conflict moot.

{¶ 25} The court was presented with many possible options for placement and ultimately committed the child to the Ohio Department of Youth Services with a recommendation of admission into the sex-offender program.

{¶ 26} The role of the guardian ad litem is most helpful with cases involving termination of parental rights or at disposition in delinquency matters. For example, the guardian ad litem might recommend alternative placement in the best interests of the child. The guardian might urge placement at less-restrictive facilities tailored to the needs of the child or might suggest other care. In this case, it appears that appointed counsel did all of the work generally associated with that of a guardian ad litem. Further, at no time does it appear that a conflict or strong possibility of a conflict existed between the biological mother and child.

{¶ 27} Admittedly, there was frustration by the legal guardians in not being able to get the necessary help for Joseph Slider and a natural desire to protect their own offspring from additional harm. However, at the critical stages of the proceedings Phyllis and Denny Gossett were still concerned that Joseph "get the help he needs," and the child's biological parent and appointed counsel were present.

{¶ 28} This court has dealt with varying factual settings when addressing this issue. See *In re Spradlin* (2000), 140 Ohio App.3d 402, 747 N.E.2d 877. This court, *In re Wilson,* Washington App. No. 04CA26, 2004-Ohio-7276, 2004 WL 3090235, stated, "[W]e decline to adopt any hard and fast rule that requires the appointment of a guardian ad litem in every case." In these cases, the factual setting is most sensitive and dictates scrutiny on a case-by-case analysis.

{¶ 29} Appellate courts should not reverse a trial court absent an abuse of discretion. See, generally, *In re Sappington* (1997), 123 Ohio App.3d 448, 704 N.E.2d 339, where the court found that "the juvenile court is in a better position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child." Courts have stated that inherent in the trial court's analysis is whether competent counsel was appointed for the child. See *In re D.M.,* 158 Ohio App.3d 780, 2004-Ohio-5858, 822 N.E.2d 433, citing *In re Johnson* (1995), 106 Ohio App.3d 38, 665 N.E.2d 247; *In re Nation* (1989), 61 Ohio App.3d 763, 573 N.E.2d 1155. See *In re Dunham* (Nov. 7, 1997), Hamilton App. Nos. C–960399 and C–960400, 1997 WL 691440.

{¶ 30} The majority opinion cites *In re Howell* (1991), 77 Ohio App.3d 80, 601 N.E.2d 92, for the proposition that failure to appoint a guardian ad litem is reversible error; however, that case and its holding arose in an adoption case and referred to permanent custody cases, not delinquency proceedings.

{¶ 31} The other cases cited by the majority are distinguishable because here the child had competent trial counsel and had his biological mother present throughout the contested portions of the proceedings. Also, the child's biological mother had no close relation to the victim, nor did she reside in the same household.

{¶ 32} The Ohio Supreme Court has stated that an abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. Id.

{¶ 33} It is also relevant that the same court in *State v. Hanning* (2000), 89 Ohio St.3d 86, 728 N.E.2d 1059, stated that the "juvenile justice system is grounded in the legal doctrine of parens patriae, meaning that the state has the power to act as a provider of protection to those unable to care for themselves." [5]

---

5. The doctrine of parens patriae has been defined as the juvenile court's acting toward those children brought before the court as a wise and kindly parent would in dealing with his own

This doctrine still allows the trial court to act in and look out for the best interests of any delinquent child and the child's immediate or extended families.

{¶ 34} I realize that this may be a close call for the majority herein. However, the following facts support my conclusion that a guardian ad litem was not required: (1) the child had competent trial counsel who acted zealously during the adjudication, (2) the testimony by the biological mother and legal guardians at all hearings indicated a concern for the delinquent child, (3) the biological mother was present throughout the adjudication and disposition hearings and did not testify against her son, (4) the appointed counsel practically and theoretically took on both roles of attorney and guardian ad litem.

{¶ 35} Thus, after reviewing the record, I would hold that the court below did not act arbitrarily, capriciously, or unconscionably in the case. The record fails to demonstrate that the court acted with perversity of will, passion, prejudice, or moral delinquency. This court, by its past decision, and rightfully so, has indicated that there is not a hard and fast rule requiring appointment in every case. In my view, there was no conflict between the child and his legal guardians sufficient to require appointment of a guardian ad litem. There was also no conflict between the child and his biological mother. Further, there were no objections made at trial preserving the issue of conflict, arguably because trial counsel as well did not see any conflict or the utility of a guardian ad litem.

{¶ 36} In my view, if there was error below, that error was harmless, as the child had competent counsel and had his biological mother present at all contested stages. The court also had multiple suggestions for disposition, all of which came from different persons. Assuming arguendo that a guardian ad litem had been appointed below, it is unlikely that the ultimate disposition would have been any different or not in the best interests of this child. In this case, we should defer to the judge below, whose eyes were more focused on the best interests of the child and who daily uses the important doctrine of parens patriae.

{¶ 37} Therefore, I would defer to the court below, which sat in a better position to determine the necessity for a guardian ad litem, and affirm the conviction.

children. See, generally, Paul C. Giannelli, Ohio Juvenile Law, citing Young, A Synopsis of Ohio Juvenile Court Law (1962), 31 Cin.L.Rev.131, 136, and Harpst, Practice in Cuyahoga County Juvenile Court (1961), 10 Clev.-Mar.L.Rev. 507.