OPINION
{¶ 1} Zachariah Tyler Smith, appeals the judgment of the Union County Court of Common Pleas, Juvenile Division, adjudicating him delinquent and committing him to the legal custody of the Ohio Department of Youth Services ("DYS") for a minimum term of one year to age twenty-one on each of the counts of his juvenile complaint. On appeal, Smith contends that his admission was not knowing, voluntary, and intelligent; that the trial court erred when it failed to appoint a guardian ad litem; that the trial court abused its discretion when it imposed dispositions and a discretionary serious youthful offender dispositional sentence upon him; that the trial court exceeded its statutory authority and violated his right to due process when he was committed to DYS for a minimum period of twelve months for the offense of gross sexual imposition; that the trial court abused its discretion when it labeled him a juvenile sex offender registrant prior to his release; that the trial court erred when it deprived him of his right to apply for driving privileges; that he was denied his constitutional right to effective assistance of counsel; that Ohio's serious youthful offender dispositional sentencing scheme violates a juvenile's right against cruel and unusual punishment and violated his right against cruel and unusual punishment; and, that Ohio's serious youthful offender law violated his right to due process. Based upon the following, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 {¶ 2} In March of 2005, Detective Mike Justice filed a four count juvenile complaint in the Union County Court of Common Pleas, Juvenile Division, alleging that Smith was a delinquent child. Under count one and count two of the juvenile complaint, Smith was charged with committing the offense of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult. Under count three, Smith was charged with committing the offense of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult. Under count four, Smith was charged with tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the fourth degree if committed by an adult. Additionally, under each count of the juvenile complaint, the State specifically requested serious youthful offender dispositional sentences under R.C. 2152.11, R.C. 2152.13, and Chapter 2929 of the Ohio Revised Code.
 {¶ 3} On April 1, 2005, a preliminary hearing was held in the juvenile court. At the preliminary hearing, the juvenile court found probable cause to believe that a crime had occurred and found that Smith was eligible to receive a serious youthful offender disposition.
 {¶ 4} On April 13, 2005, the Union County Grand Jury indicted Smith for the identical four charges found in the juvenile complaint. The criminal indictment was later transferred to the Union County Court of Common Pleas, Juvenile Division, pursuant to R.C. 2152.03.
 {¶ 5} On April 14, 2005, Smith appeared at his arraignment on the criminal indictment. At his arraignment, Smith denied the counts in the juvenile complaint and pled not guilty to the charges in the criminal indictment.
 {¶ 6} In May of 2005, Smith appeared in juvenile court for adjudication and to plea on all charges. During the hearing, the State moved to dismiss the tampering with evidence charge in both the juvenile complaint and the criminal indictment. In exchange for the dismissal of the tampering with evidence change, Smith was to admit to the remaining three counts in the juvenile complaint and to enter a guilty plea to the remaining three counts in the criminal indictment. Before accepting Smith's admissions and pleas, the juvenile court incorrectly informed Smith of the possible dispositions and sentences that would result from his admissions and pleas. Specifically, the juvenile court informed Smith that under counts one and two of the juvenile complaint, he could receive, among other things, DYS commitment for an indefinite period of time consisting of a minimum period of one to three years and a maximum period not to exceed the age of twenty-one years. The juvenile court also informed Smith that under counts one and two of the criminal indictment, he could receive, among other things, a prison term of three to ten years. The court also explained Smith's judicial release rights, if he was sentenced to an adult correction facility. Smith then entered his admissions to all three counts of the juvenile complaint and entered guilty pleas to all three counts of the criminal indictment. Additionally, Smith stipulated to being a serious youthful offender; that he was fourteen years of age; that the offenses were violent offenses; that he was previously adjudicated a delinquent child for having committed a felony of the second degree if committed by an adult; and, that he was a sexually oriented offender for having committed a sexually oriented offense and would be required to register as required by Ohio law. At this time, the juvenile court accepted Smith's admissions and pleas to these charges and adjudicated him a delinquent child.
 {¶ 7} On June 17, 2005, Smith attended a dispositional hearing, a serious youthful offender sentencing hearing, and a sex offender classification hearing. At the beginning of the hearing, the juvenile court had him waive each of the rights provided under Juv.R. 29, even though he previously waived these rights during his arraignment and adjudicatory hearing. For his juvenile disposition, the juvenile court, under count one, committed Smith to DYS for a minimum period of three years, maximum of his twenty-first birthday for rape; under count two, a minimum period of one year, maximum of his twenty-first birthday for rape; and, under count three, a minimum period of one year, maximum of his twenty-first birthday for gross sexual imposition. Also, the juvenile court ordered that these dispositions be served concurrently for a total minimum of three years.
 {¶ 8} Additionally, the juvenile court committed Smith to the Miami Valley Juvenile Rehabilitation Center upon his release from DYS for a minimum of twelve months to complete a sex offender treatment program. The juvenile court also placed Smith on probation until he was twenty-one years old and imposed a suspended commitment to the Central Ohio Youth Center for a period of ninety days on each count of the juvenile complaint, to be invoked if Smith failed to satisfactorily complete probation. Smith was further ordered to complete two-hundred hours of community service, to obtain his high school diploma, and was prohibited from obtaining a driver's license.
 {¶ 9} Since Smith stipulated to being a serious youthful offender, the juvenile court imposed the adult portion of his sentence. For the adult portion of his sentence, the juvenile court sentenced Smith to a life sentence with the possibility of parole. The adult portion of the sentence was stayed pending the successful completion of the juvenile portion of the sentence.
 {¶ 10} It is from this judgment Smith appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I Zachariah Smith's admission was not knowing, voluntary, andintelligent, in violation of the Fifth and fourteenth Amendmentsto the United States Constitution, Article I, Sections 10 and 16of the Ohio Constitution, and Juvenile Rule 29.
 Assignment of Error No. II The juvenile court committed reversible error when it failedto appoint a guardian ad litem for Zachariah Smith in violationof Ohio Revised Code Section 2151.281(A) and Juvenile Rule 4(B).
 Assignment of Error No. III The juvenile court abused its discretion when it imposeddispositions which were not reasonably calculated to achieve theoverriding purposes of the juvenile code, as required by R.C.2152.01(B) and further abused its discretion when it imposed adiscretionary serious youthful offender dispositional sentence onZachariah Smith, contrary to the requirements of R.C.2152.13(B)(2).
 Assignment of Error No. IV The juvenile court exceeded its statutory authority andviolated Zachary Smith's right to due process when it committedZachariah to the Ohio Department of Youth Services for a minimumperiod of twelve months for the offense of Gross SexualImposition.
 Assignment of Error No. V The juvenile court abused its discretion when it labeledZachariah Smith a juvenile sex offender registrant prior to hisrelease, in violation of Ohio Revised Code Section 2152.83(B).
 Assignment of Error No. VI The trial court erred when it deprived Zachariah Smith of hisright to apply for driving privileges because he had not beenissued a driver's license, probationary driver's license, ortemporary instruction permit.
 Assignment of Error No. VII Zachariah Smith was denied his constitutional right toeffective assistance of counsel under the Sixth andfourteenth Amendments to the United States Constitution and Article I,Sections 10 and 16 of the Ohio Constitution.
 Assignment of Error No. VIII Ohio's serious youthful offender dispositional sentencingscheme, R.C. 2152.021, R.C. 2152.11, R.C. 2152.13, and R.C.2152.14, violates a juvenile's right against cruel and unusualpunishment and violated Zachariah Smith's right against cruel andunusual punishment as applied as guaranteed by the Eighth andfourteenth Amendment to the United States Constitution andArticle I, Section 9 of the Ohio Constitution.
 Assignment of Error No. XI Ohio's serious youthful offender law, R.C. 2152.021, R.C.2512.11, R.C. 2152.13, and R.C. 2152.14 violates a juvenile'sright to due process as guaranteed by the Fifth andfourteenth Amendments to the United States Constitution and Article I,Section 16 of the Ohio Constitution.
 Assignment of Error No. I {¶ 11} In his first assignment of error, Smith argues that the juvenile court failed to substantially comply with Juv.R. 29 prior to accepting his admissions. Specifically, Smith argues that the juvenile court failed to determine if he understood the nature of the charges before his admission. Additionally, Smith argues that the juvenile court failed to properly advise him of the consequences of his admissions. Upon our review of the record, we agree.
 {¶ 12} Juv.R. 29(D) provides, in pertinent part:
The court may refuse to accept an admission and shall notaccept an admission without addressing the party personally anddetermining both of the following:
 (1) The party is making the admission voluntarily withunderstanding of the nature of the allegations and theconsequences of the admissions;
 (2) The party understands that by entering an admission theparty is waiving the right to challenge the witnesses andevidence against the party, to remain silent, and to introduceevidence at the adjudicatory hearing.
 {¶ 13} An admission in a juvenile proceeding, pursuant to Juv.R. 29, is analogous to a guilty plea made by an adult pursuant to Crim.R. 11 in that both require that a trial court personally address the defendant on the record with respect to the issues set forth in the rules. In re C.K., 8th Dist. No. 79074, 2002-Ohio-1659; In re Royal (1999), 132 Ohio App.3d 496,504; In re Jenkins (1995), 101 Ohio App.3d 177, 179. Both Crim.R. 11 and Juv.R. 29 require the respective courts to make careful inquires in order to insure that the admission or guilty plea is entered voluntarily, intelligently, and knowingly. In reFlynn (1995), 101 Ohio App.3d 778, 781; In re McKenzie (1995),102 Ohio App.3d 275, 277. "In order to satisfy the requirements of [Juv.R. 29], the court must address the youth personally and conduct an on-the-record discussion to determine whether the admission is being entered knowingly and voluntarily." In reWest (1998), 128 Ohio App.3d 356, 359. Juv.R. 29(D) also places an affirmative duty upon the juvenile court, requiring the court to personally address the juvenile and determine that the juvenile, not merely the attorney, understands the nature of the allegations and the consequences of entering the admission. Inre Beechler (1996), 115 Ohio App.3d 567.
 {¶ 14} The best method for obtaining compliance with Juv.R. 29(D) is for a court to use the language of the rule, "carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows he is waiving it by entering an admission." In re Miller
(1997), 119 Ohio App.3d 52, 58, citing State v. Ballard (1981),66 Ohio St.2d 473. The Ohio Supreme Court has required only "substantial compliance" with Crim.R. 11(C)(2) before a trial court properly accepts a guilty plea. Consequently, Ohio's appellate courts have declared that the failure of a juvenile court to substantially comply with Juv.R. 29(D) has a prejudicial effect necessitating a reversal of the adjudication so that the juvenile may plead anew. In re Doyle (1997),122 Ohio App.3d 767, 772; In re Hendrickson (1996), 114 Ohio App.3d 290; In reChristopher R. (1995), 101 Ohio App.3d 245, 248.
 {¶ 15} We recognize that, unlike Crim.R. 11(C)(2), Juv.R. 29(D) does not expressly require the court to inform a juvenile of the maximum penalty he faces, but does require the court to convey the "consequences" of the juvenile's admission. In In reHendrickson, the Second District held that under Juv.R. 29(D), a juvenile court must apprise a juvenile of its dispositional options before the juvenile makes an admission.114 Ohio App.3d at 293.
 {¶ 16} The threshold issue here is whether the juvenile court's colloquy with Smith demonstrates substantial compliance with the requirements of Juv.R. 29(D). Based upon our review of the record, we conclude that the juvenile court did not substantially comply with the requirements of Juv.R. 29(D).
 {¶ 17} We begin with a discussion of R.C. 2152.13 and the blended sentences imposed upon a "serious youthful offender." A "serious youthful offender" is defined as "a person who is eligible for a mandatory SYO or discretionary SYO but who is not transferred to the adult court under the mandatory or discretionary transfer." R.C. 2152.02(X). A "mandatory SYO" is "a case in which the juvenile court is required to impose a mandatory serious youthful offender disposition under [R.C. 2152.13]", and a "discretionary SYO" is a case in which the juvenile court has discretion to "impose a serious youthful offender disposition under [R.C. 2152.13]." R.C. 2152.02(Q) and (H). As a part of his admissions and pleas, Smith stipulated that he was a serious youthful offender.
 {¶ 18} R.C. 2152.13(D)(2) provides the requirements of a dispositional sentence for a discretionary SYO. R.C.2152.13(D)(2) provides:
(a) If a child is adjudicated a delinquent child forcommitting an act under circumstances that allow, but do notrequire, the juvenile court to impose on the child a seriousyouthful offender dispositional sentence under section 2152.11 ofthe Revised Code, all of the following apply:
 (i) If the juvenile court on the record makes a finding that,given the nature and circumstances of the violation and thehistory of the child, the length of time, level of security, andtypes of programming and resources available in the juvenilesystem alone are not adequate to provide the juvenile court witha reasonable expectation that the purposes set forth in section2152.01 of the Revised Code will be met, the juvenile court mayimpose upon the child a sentence available for the violation, asif the child were an adult, under Chapter 2929. of the RevisedCode, except that the juvenile court shall not impose on thechild a sentence of death or life imprisonment without parole.
 (ii) If a sentence is imposed under division (D)(2)(a)(i) ofthis section, the juvenile court also shall impose upon the childone or more traditional juvenile dispositions under sections2152.16, 2152.19, and 2152.20 and, if applicable, section 2152.17of the Revised Code.
 (iii) The juvenile court shall stay the adult portion of theserious youthful offender dispositional sentence pending thesuccessful completion of the traditional juvenile dispositionsimposed. (b) If the juvenile court does not find that a sentenceshould be imposed under division (D)(2)(a)(i) of this section,the juvenile court may impose one or more traditional juveniledispositions under sections 2152.16, 2152.19, 2152.20, and, ifapplicable, section 2152.17 of the Revised Code.
 {¶ 19} In the case sub judice, the juvenile court on multiple occasions improperly advised Smith of the possible adult sentences on the two counts of rape in the criminal indictment, which could be imposed against him.
 {¶ 20} First, during Smith's April 1, 2005 preliminary hearing, the juvenile court stated:
[The counts of rape] carry the following possible penalties ifadult sanctions are imposed: First of all, the adult sanction islife imprisonment without parole. However, Ohio Revised CodeSection 2152.13 does not permit the Court to impose such astringent, strong sentence. The Court can impose a prison termof 3, 4, 5, 6, 7, 8, 9, or 10 years * * *.
(April 1, 2005 Tr. pp. 21-22) (emphasis added). The juvenile court also incorrectly advised Smith as to the possible disposition on the count of gross sexual imposition. Additionally, in its journal entry following this hearing, the juvenile court stated,
The Defendant was informed that Rape, (count one and two),both felonies of the first degree, if committed by an adult,could result in an adult sentence of life imprisonment under theRevised Code however, pursuant to O.R.C. Section 2152.13, theCourt is not permitted to impose a life sentence in this matter.The Court may impose a sentence of 3, 4, 5, 7, 8, 9, or 10years * * *.[1]
(April 26, 2005 Journal Entry p. 3) (emphasis added).
 {¶ 21} Second, during Smith's April 18, 2005 arraignment hearing on potential penalties under the counts of the criminal indictment, the juvenile court stated:
[Rape] [c]arries the following possible penalties if adultsanctions are invoked: First of all, life imprisonment withoutparole can be ordered. However, according to [R.C.] 2152.13, theJuvenile Court does not — is not allowed to sentence you to thateven if you are found to have violated that particular section ofthe law. So the Court can order you to a prison term of 3, 4,5, 6, 7, 8, 9, or 10 years * * *.
(April 18, 2005 Tr. pp. 10-11) (emphasis added).
 {¶ 22} Third, in May of 2005 at a change of plea hearing, the juvenile court reviewed with Smith the possible adult sentences that could arise out of his admissions and pleas to rape, stating:
[F]or counts one and two of rape under Ohio Revised CodeSection 2907.02(A)(1)(b), which is a felony of the first degreeif committed by an adult. That — those counts can allow aprison term of 3, 4, 5, 6, 7, 8, 9, or 10 years * * *.
(May 2005 Tr. p. 11) (emphasis added). After the juvenile court reviewed, on the record, all of the possible dispositions and sanctions that it could order under the juvenile complaint, the potential sentences under the criminal indictment, and the rights Smith would waive with his admission and guilty plea, Smith admitted to the three charges in the juvenile complaint, and entered guilty pleas to the three charges in the criminal indictment. Additionally, at the hearing, the State moved to dismiss count four of both the juvenile complaint and the criminal indictment, tampering with evidence. Smith then stipulated that he was a serious youthful offender and that a juvenile disposition and an adult sentence would result from his admissions and guilty pleas. In a combined judgment entry and plea agreement, the juvenile court included language stating that the potential prison term under the counts of the criminal indictment for rape was between three and ten years. The juvenile court then scheduled a dispositional and serious youthful offender hearing for June 17, 2005.
 {¶ 23} However, on June 17, 2005, the juvenile court opened the session by stating that the purpose of the hearing was for the following: "[a] further arraignment and plea hearing,[2] [a] sex offender classification hearing, [a] dispositional hearing, and [a] serious youthful offender sentencing hearing, and a hearing to decide the appropriateness of sex offender registration." (June 17, 2005 Tr. p. 4). At this hearing, the juvenile court properly informed Smith of the notice requirements for the hearings; had Smith and his mother sign a waiver of notice of hearing; informed Smith and his mother of their entitlement to be represented by counsel; and, found that Smith and his mother knowingly and voluntarily waived those rights. (June 17, 2005 Tr. p. 5-8). The juvenile court then proceeded to conduct "the arraignment and initial hearing" at which time, Smith waived his right to have his juvenile complaint and criminal indictment read. (June 17, 2005 Tr. p. 8). Next, the juvenile court informed Smith of his right to remain silent and that if he entered a plea, he would be waiving that right; of his right to a speedy and public trial by jury, and noted that he had filed a written waiver of his right to a jury trial and that he maintained his waiver; of his right to written transcripts of the proceedings; of his right to require the State of Ohio to prove the charges against him beyond a reasonable doubt; of his right to confront any evidence the State might present and to confront any witnesses brought by the State; and, of his right to present his own evidence and to bring witnesses. (June 17, 2005 Tr. p. 8-12). Smith waived each of these rights individually. (June 17, 2005 Tr. p. 9-13).
 {¶ 24} The juvenile court then proceeded to inform Smith of the consequences of the charges that were currently pending against him. The juvenile court began by informing Smith that the State was going to move to dismiss the fourth count of both the juvenile complaint and criminal indictment, which the State did and the juvenile court dismissed. The juvenile court then informed Smith,
[U]nder counts one and two, that's the rape charge of RevisedCode Section 2907.02(A)(1)(b), which is a felony of the firstdegree if committed by an adult. That carries the followingpossible penalties if adult sanctions are invoked: Lifeimprisonment with parole. Since the victim of the alleged actis four years of age, under 2967.13(A)(5) of the Ohio RevisedCode, you would be eligible for parole after serving 10 fullyears of imprisonment. Under 2967.13(A)(5) of the Ohio RevisedCode, you would be eligible, like I said, for parole afterserving 10 full years.[3]
(June 17, 2005 Tr. p. 14) (emphasis added). The juvenile court, on the record, proceeded to inform Smith of the other consequences for his gross sexual imposition charge and the possible consequences for the charges in the juvenile complaint, noting that he could be classified and the consequences of being classified as a sexually oriented offender, a habitual sex offender, or a sexual predator; that he could be required to register as a juvenile sex offender; that he could be sentenced either concurrently or consecutively; the consequences of being under post-release control if a prison sentence was imposed; his possible pleas under both the Criminal and Juvenile Rules; and finally, that he could be required to pay fines, costs, and restitution.
 {¶ 25} Smith then admitted to the three remaining charges in the juvenile complaint and entered guilty pleas to the three remaining counts of the criminal indictment. The juvenile court then reminded Smith that by entering an admission that he was giving up the right to remain silent, the right to require the State to prove the charges beyond a reasonable doubt, and the right to present any evidence including statements on his own behalf. After the juvenile court inquired about whether Smith was admitting to and pleading to the statements in the juvenile complaint and criminal indictment on his own free act and deed and not being forced to do it, the juvenile court adjudicated him a delinquent child and a serious youthful offender as stated in the juvenile complaint on all three counts. The juvenile court also accepted his plea of guilty to the three counts in the criminal indictment.
 {¶ 26} Upon review of the record, we find that the trial court erred when it accepted Smith's admission. While we recognize that the juvenile court went through the proper procedures on June 17, 2005, Smith had already pled guilty. The juvenile court failed to inform Smith, on the record, as to why he was making a second guilty plea and admission, which we find to be in error. Additionally, the signed, written plea agreement incorrectly stated that Smith had only pled not guilty.
 {¶ 27} As noted above, in May of 2005, Smith withdrew his plea of not guilty and admitted to and pled guilty to the three counts alleged in the juvenile complaint and criminal indictment. At that time, the juvenile court accepted Smith's admission and plea and adjudicated him a delinquent child and scheduled sentencing for June 17, 2005. Then, on June 17, 2005, the juvenile court held a hearing for five different purposes, including a further arraignment and plea hearing. At no time during the June 17, 2005 hearing did the juvenile court refer to the fact that Smith had already admitted and pled guilty to the charges in the juvenile complaint and the criminal indictment in May of 2005.
 {¶ 28} Clearly, Smith had already admitted to and entered a plea of guilty to the charges alleged against him before the June 17, 2005 hearings. Therefore, we find that in order for Smith to have made a knowing, voluntary, and intelligent admission under Juv.R. 29(D), the juvenile court, on the record, should have explained to Smith that he had previously been incorrectly advised of the potential dispositions and sentences for both gross sexual imposition and rape. The juvenile court should then have vacated Smith's previous admissions and pleas. He should then have been advised that his previous denials and not guilty pleas were reinstated, leaving Smith in the position that he was in prior to his May 2005 admission and change of plea. Additionally, the juvenile court should have insured, on the record, that Smith understood what the juvenile court was doing and why.
 {¶ 29} As a result, we cannot find that Smith made his admission knowingly, voluntarily, and intelligently, when the juvenile court, failed to inform Smith, on the record, why he was required to enter new admissions and pleas and why the juvenile court was considering his former admissions and pleas to be null and void. Accordingly, Smith's first assignment of error is sustained.
 Assignment of Error No. II {¶ 30} In his second assignment of error, Smith argues that the juvenile court erred by failing to appoint a guardian ad litem pursuant to R.C. 2151.281(A)(2) and Juv.R. 4(B). Specifically, Smith contends the juvenile court was required to appoint a guardian ad litem to protect his best interests, because a conflict existed between him and his parents. We disagree.
 {¶ 31} R.C. 2151.281(A) and Juv.R. 4(B) require that a juvenile court appoint a guardian ad litem in certain circumstances. R.C. 2151.281(A) provides:
The court shall appoint a guardian ad litem to protect theinterest of a child in any proceeding concerning an alleged oradjudicated delinquent child or unruly child when either of thefollowing applies:
 (1) The child has no parent, guardian, or legal custodian.
 (2) The court finds that there is a conflict between the childand the child's parent, guardian, or legal custodian.
 {¶ 32} Similarly, Juv.R. 4(B) states:
The court shall appoint a guardian ad litem to protect theinterests of a child or incompetent adult in a juvenile courtproceeding when:
 (1) The child has no parents, guardians, or legal custodian;[or]
 (2) The interests of the child and the interests of the parentmay conflict * * *.
 {¶ 33} The plain and unambiguous language of Juv.R. 4(B)(2) mandates that the possibility that interests "may conflict" is sufficient for the required appointment of a guardian ad litem. In re Sappington (1997), 123 Ohio App.3d 448, 453
(emphasis added). To this extent, Juv.R. 4(B)(2) differs from R.C. 2151.281(A)(2) which mandates appointment only if the court finds "there is a conflict of interest[.]" Id. at 453 (emphasis added).
 {¶ 34} Nevertheless, because R.C. 2151.281(A) and Juv.R. 4(B) are mandatory, the juvenile courts failure to appoint a guardian ad litem when these provisions are applicable would constitute reversible error. In re Adoption of Howell (1991),77 Ohio App.3d 80, 92. "[T]he juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and the child."Sappington, 123 Ohio App.3d at 453-54, citing Trickey v.Trickey (1952), 158 Ohio St. 9, 13. Thus, an abuse of discretion standard applies to the juvenile court's decision to appoint a guardian ad litem. Sappington, 123 Ohio App.3d at 454. The relevant question on appeal is whether the record reveals an actual or potential conflict of interest which required the appointment of a guardian ad litem. Id.
 {¶ 35} Here, Smith failed to object to the absence of an appointed guardian ad litem. Generally, arguments on appeal are deemed waived if they are not presented before the juvenile court and will be enforced on appeal only if the error constitutes plain error. In re Slider, 160 Ohio App.3d 159, 163,2005-Ohio-1457, at ¶ 11, citing In re Johnson, 10th Dist. No. 03AP-1264, 2004-Ohio-3886, citing Stores Realty Co. v. City ofCleveland Bd. of Bldg. Stds. Bldg. Appeals (1975),41 Ohio St.2d 41, 43.
 {¶ 36} The plain error doctrine allows a court to take note of plain errors or defects affecting substantial rights, even though such error was not brought to the attention of the trial court. See State v. Long (1978), 53 Ohio St.2d 91; State v.Smith (June 27, 1995), 8th Dist. No. 940APA12-1702. The doctrine is to be used cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. Long,53 Ohio St.2d, at 94.
 {¶ 37} Upon review of the record, we find that the trial court neither abused its discretion nor committed plain error when it failed to appoint a guardian ad litem or inquire into whether a guardian ad litem was necessary. During each of the hearings, Smith's mother, Ms. Trina Smith, appeared with her son.[4] Additionally, during the June 2005 dispositional hearing, Ms. Smith spoke on her son's behalf, and urged the juvenile court not to commit him to DYS. Thus, we do not find that there was a conflict of interest between Smith and his parents or that there was a possibility that there was a conflict of interest between them, which would require the juvenile court to appoint a guardian ad litem.[5]
 {¶ 38} Accordingly, Smith's second assignment of error is overruled.
 Assignments of Error Nos. III, IV, V, VI, VII, VIII, and IX {¶ 39} In his third assignment of error, Smith argues that the juvenile court abused its discretion when it imposed multiple dispositions and when it imposed a discretionary serious youthful offender dispositional sentence absent the requisite findings. In his fourth assignment of error, Smith argues that the juvenile court exceeded its statutory authority and violated his due process rights when it disposed him for the offense of gross sexual imposition. In his fifth assignment of error, Smith argues that the juvenile court abused its discretion when it labeled him a juvenile sex offender registrant prior to his release, in violation of R.C. 2152.83(B). In his sixth assignment of error, Smith argues that the trial court abused its discretion when it denied him his right to apply for driving privileges. In his seventh assignment of error, Smith argues that he was denied his constitutional right to effective assistance of counsel. In his eighth assignment of error, Smith argues that Ohio's serious youthful offender dispositional scheme violates a juvenile's right against cruel and unusual punishment. In his ninth assignment of error, Smith argues that Ohio's serious youthful offender law violates a juvenile's right to due process. Our resolution of Smith's first assignment of error renders his third, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error moot and we decline to address them. App.R. 12(A)(1)(c).
 {¶ 40} Having found no error prejudicial to Appellant herein in the particulars assigned and argued in his second assignment of error, but having found error prejudicial to the Appellant herein in the particulars assigned and argued in his first assignment of error, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
Judgment Affirmed in Part and Reversed in Part and CauseRemanded.
 Bryant, P.J., and Shaw, J., concur.
[1] We note that the judgment entry fails to include the number "six" in its list of years. Even though this is error, we find it to be harmless and just a typographical error.
[2] We note that the record appears to be void of any explanation as to why Smith was required to plead again.
[3] We note that this the first occasion on which the record reflects that Smith was advised of the possibility of a life sentence on the charges of rape.
[4] We note that Smith's father was given notice of the hearings, but he did not attend any of them.
[5] Smith was also appointed counsel, who represented him at his hearings. We note that the appointment of trial counsel does not render the failure to appoint a guardian ad litem harmless error. In re Wilson, 4th Dist. No. 04CA26, 2004-Ohio-7276, at ¶ 19.