OPINION
{¶ 1} Appellant appeals the September 30, 2004, decision of the Licking County Court of Common Pleas, Juvenile Division, granting Appellee Licking County Department of Job and Family Services' ("the Agency") motion for permanent custody.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 17, 2003, Appellee, the Licking County Department of Job and Family Services (SCDJFS), filed a complaint for permanent custody of Princess Jasmine McHugh, d.o.b. 4/27/94, Joseph McHugh, III, d.o.b. 12/14/95, Alyssa McHugh, d.o.b. 12/22/97 and Sophia McHugh, d.o.b. 4/3/02, alleging the children to be neglected, abused and/or dependent. Mother of the child is appellant, Leslie McHugh.
 {¶ 3} The Agency's involvement with the McHughs began on May 2, 1994, five days after the birth of their first child, Princess. Princess was in the care of VanWert Children Services (VCS) for the first year of her life, only returning to her parents on April 26, 1995, under a Protective Supervision Order.
 {¶ 4} On September 25, 1995, the McHughs placed Princess back into the voluntary custody of VCS until October 20, 1995. The Protective Supervision Order was extended on October 24, 1995, and Princess was again placed in the voluntary custody of VCS,
 {¶ 5} On December 14, 1995, the McHughs' second child, Joey, was born, and a dependency complaint was filed on his behalf.
 {¶ 6} On December 29, 1995, both Princess and Joey were placed under a Protective Supervision Order and returned to their parents. The Order continued and was extended once over the next year.
 {¶ 7} On November 15, 1996, a new filing of abuse/dependency was filed, with an ex parte order being granted on said date and the children being placed in foster care.
 {¶ 8} On December 9, 1996, a preliminary hearing was held and the Court placed the children back with their parents ad commenced Homebase involvement.
 {¶ 9} On December 27, 1996, the father was ordered out of the home from 6:00 p.m. until 8:00 a.m. due to concerns about sexual fantasies he was having about his daughter and concerns that he may have acted on same.
 {¶ 10} On January 13, 1997, the children were again adjudicated dependent, the abuse allegation being dropped.
 {¶ 11} In June, 1997, the McHughs' case was transferred to Licking County due to relocation by the parents.
 {¶ 12} Upon review by Licking County, the trial court extended the Protective Supervision Order until June 6, 1998.
 {¶ 13} On December 2, 1997, Appellee requested and received Shelter Care of Princess and Joey.
 {¶ 14} On December 23, 1997, Appellees requested and received Shelter Care of the McHughs' third child, Alyssa, was born on December 22nd.
 {¶ 15} On January 28, 1998, Princess was found to be abused and dependent. Joey and Alyssa were found to be dependent. Temporary custody of all three children was granted to the Agency.
 {¶ 16} On August 11, 1998, Alyssa was returned to her parents under a Protective Supervision Order.
 {¶ 17} On December 16, 1998, Princess and Joey were returned to their parents under a year long Protective Supervision Order.
 {¶ 18} In May, 1999, Appellee requested early termination of the Protective Supervision Order.
 {¶ 19} The trial court granted the early termination of the Protective Supervision Order, but a voluntary case was opened and the Agency continued to work with the McHughs on an intensive basis, in conjunction with other service providers, through May, 2001.
 {¶ 20} On April 3, 2002, the McHughs' fourth child, Sophia, was born.
 {¶ 21} On July 2, 2003, Joey was accidentally locked in automobile trunk.
 {¶ 22} On July 16, 2003, Alyssa went to YMCA day camp with a black eye and a bruise on her face.
 {¶ 23} On July 16, 2003, all four children were removed and with the subject motion for permanent custody being filed.
 {¶ 24} Adjudicatory and dispositional hearings were held on September 16, 17 and 18, 2003, and by judgment entry filed October 31, 2003, the magistrate granted appellee permanent custody of the children. Findings of fact and conclusions of law were filed same date.
 {¶ 25} Appellant filed objections to the magistrate's decision which were denied by the trial court judge in a Judgment Entry filed September 30, 2004.
 {¶ 26} Appellant filed an appeal and this matter is now before this court for consideration. Appellant's assignments of error are as follows:
 ASSIGNMENT OF ERROR {¶ 27} "I. The trial court erred to appellant's prejudice when it failed to appoint counsel for the children.
 {¶ 28} "II. The trial court erred to appellant's prejudice when it failed to appoint a guardian ad litem for the appellant.
 {¶ 29} "III. The judgment of the trial court that the minor children cannot or should not be placed with appellant within reasonable time was against the manifest weight and sufficiency of the evidence.
 {¶ 30} "IV. The judgment of the trial court that the best interests of the minor children would be served by the granting of permanent custody was against the manifest weight and sufficiency of the evidence."
 I. {¶ 31} In her first assignment of error, Appellant argues that the trial court erred in not appointing legal counsel for the children separate from the court appointed guardian ad litem. We disagree.
 {¶ 32} Generally, the appointment of separate individuals to serve as guardian ad litem and counsel for a child is only required if either the guardian ad litem or the trial court determines that a conflict exists between the role of guardian ad litem and the role of an attorney. See Juv.R. 4(C)(2). Under the plain language of R.C. 2151.352, indigent children are entitled to appointed counsel in all juvenile court proceedings. State ex rel. Asberry v. Payne, 82 Ohio St.3d 44, 48,1998-Ohio-596. When an attorney is appointed as guardian ad litem, that attorney may also act as counsel for the child, absent a conflict of interest. In re Smith (1991), 77 Ohio App.3d 1, 14.
 {¶ 33} In the case sub judice, appellant presented no evidence which would establish that a conflict existed between Attorney John Obora's performance as the children's guardian ad litem and attorney. Accordingly, the juvenile court did not err by not appointing a separate attorney and separate guardian ad litem to represent the children.
 {¶ 34} Appellant's first assignment of error is overruled.
 II. {¶ 35} In her second assignment of error, Appellant argues that the trial court erred by failing to appoint a guardian ad litem for Appellant. We disagree.
 {¶ 36} Specifically, Appellant argues that the trial court should have appointed a guardian ad litem for her due to her "borderline to low average range of functioning" in addition to her court appointed counsel.
 {¶ 37} Neither appellant nor her attorney requested that a guardian ad litem be appointed for her, therefore appellant has waived all but plain error.
 {¶ 38} The plain error doctrine originated in criminal law and is embodied in Crim.R. 52(B) which provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In re Etter (1998),134 Ohio App.3d 484, 492, 731 N.E.2d 694. This doctrine has been applied in civil cases as well. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121, 679 N.E.2d 1099; see also, LeFort v. Century21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 124, 512 N.E.2d 640; Inre Etter, supra. The plain error doctrine may be applied only in the extremely rare civil case "* * * where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, public confidence in, judicial proceedings." Id. "In an appropriate case, however, a reviewing court can find plain error when the trial court has failed to appoint a guardian ad litem and such failure results in prejudice to the party in need of a guardian." In re Holmes (Feb. 15, 2001), 8th Dist. No. 77785.
 {¶ 39} R.C. § 2151.281(C) and Juv.R. 4(B)(3) require that the court appoint a guardian ad litem to protect the interests of an incompetent adult in a juvenile proceeding where the parent appears to be mentally incompetent. In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232.
 {¶ 40} R.C. § 2151.281 provides in pertinent part:
 {¶ 41} "(C) In any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent.
 {¶ 42} "* * *
 {¶ 43} "(E) A parent who is eighteen years of age or older and not mentally incompetent shall be deemed sui juris for the purpose of any proceeding relative to a child of the parent who is alleged or adjudicated to be an abused, neglected, or dependent child."
 {¶ 44} Juv.R. 4(B)(3) contains similar provisions and states:
 {¶ 45} "(B) Guardian ad litem; when appointed. — The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
 {¶ 46} "* * *
 {¶ 47} "(3) The parent is under eighteen years of age or appears to be mentally incompetent."
 {¶ 48} The first inquiry in determining whether the trial court complied with R.C. § 2151.281(C) and Juv.R. 4(B)(3) is whether the parent appeared "mentally incompetent" during the trial court proceedings. In reK.P., 8th Dist. No. 82709, 2004-Ohio-1448, at ¶ 22 as amended nunc pro tunc by 2004-Ohio-1674; In re Anderson, 4th Dist. No. 02CA38, 2002-Ohio-7405, at ¶ 7; In re King-Bolen (Oct. 10, 2001), 9th Dist. Nos. 3196-M, 3231-M, 3200-M, 3201-M; In re McMunn (Jan. 24, 1990), 4th Dist. No. 88 CA 8.
 {¶ 49} If the court finds that a guardian ad litem should have been appointed, the next inquiry is whether there was any prejudice by the failure to appoint a guardian ad litem. In re K.P., supra at ¶ 24; In reAnderson, supra at ¶ 9.
 {¶ 50} Appellant has not pointed to anything in the record to show how she was prejudiced by the failure to have a guardian ad litem and also has not argued how having a guardian ad litem would have altered the outcome.
 {¶ 51} From the record, it is evident that appointment of a guardian ad litem would not have remedied appellant's failure to comply with her case plan and would not have improved her parenting abilities or changed the fact hat the children had special needs.
 {¶ 52} In the case sub judice, the evidence was overwhelming in support of the Agency obtaining permanent custody. We further find that Appellant had been adequately protected because she had been represented by counsel throughout the entire dispositional hearing.
 {¶ 53} We, therefore, conclude that appellant has not shown that she was prejudiced by the lack of an appointed guardian ad litem.
 {¶ 54} Appellant's second assignment of error is overruled.
 III., IV. {¶ 55} In her third assignment or error, Appellant claims the trial court's granting of permanent custody was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 56} In her third assignment of error Appellant argues that the trial court's finding that the children cannot or should not be placed with Appellant within a reasonable time was error.
 {¶ 57} In her fourth assignment of error, Appellant argues that the trial court's finding that the best interests of the children would be served by the granting of permanent custody was error.
 {¶ 58} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 59} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 60} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 61} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 62} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 63} "(10) The parent has abandoned the child.
 {¶ 64} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 65} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 66} (16) Any other factor the court considers relevant."
 {¶ 67} R.C. § 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. § 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 68} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 69} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 70} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 71} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 72} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 73} In the case sub judice, the trial court considered the two most recent incidents involving negligent supervision and injury along with the all of the past problems and placements dating back to the birth of the first child. The trial court heard testimony from sixteen (16) witnesses. The trial court found that these parents "have struggled to supervise, protect, and meet the special and extraordinary needs of their children." (10/31/04 J.E. at ¶ 7, p. 3). The Court found that even with the massive outside intervention and assistance they are receiving, these parents are unable to reliably ensure the safety of the children and provide for their special needs." Id. at ¶ 8, p. 4). The trial court cites to the record indicating that the McHughs have worked with more than 43 service providers from various agencies. (T. at 449).
 {¶ 74} We find clear and convincing evidence to support the trial court's decision that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 75} As for best interests, the trial court found that the children were in need of a legally secure permanent placement and that such could not be achieved without a grant of permanent custody to the Agency.
 {¶ 76} The trial court found that the children are now cognitively at the same or higher level than that of their parents which will only make it more challenging for their parents to supervise them. (T. at 94). Additionally, the trial court found that the testimony established that the parents used profanity when disciplining the children and that the parents allowed the children to go unsupervised for hours. (T. at 86). Additionally, the trial court cited that the Appellant felt threatened by her son Joey who exhibits aggressive behavior toward his siblings and his mother. (T. at 87, 102, 453).
 {¶ 77} The trial court found that this was a situation "where despite the love and efforts of the parents, their own special needs, their own limitations prohibit them from adequately parenting their children." (9/30/04 J.E. at p. 3)
 {¶ 78} Appellant finally argues that the children should be left with their parents because, due to the special needs and the ages of the children (now ten, nine, seven and two), their ability to be adopted is questionable and there is a chance that they will spend the remainder of their minority in foster care.
 {¶ 79} We find this argument to be without merit. We cannot choose to give up on a chance for better life for these children just because they have special needs.
 {¶ 80} For the above reasons, we find the trial court's judgment was not against the manifest weight of the evidence and sufficient evidence was submitted to support the trial court's determinations.
 {¶ 81} The judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division is hereby affirmed.
Boggins, P.J., Farmer, J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division is hereby affirmed.