[Cite as *In re D.A.G.*, 2013-Ohio-3414.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF:                    :
                                     :
     D. A. G.                        :     Case Nos.    13CA3366
                                     :                  13CA3367
Adjudicated Delinquent Child         :
                                     :     DECISION AND JUDGMENT
                                     :     ENTRY
                                     :
                                     :     **Released: 07/26/13**

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Charlyn Bohland, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Robert C. Hess, Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

McFarland, P.J.

{¶ 1} Appellant, D.G., appeals the trial court's decisions that adjudicated him a delinquent child and that imposed previously-stayed commitments to the Department of Youth Services (DYS) after he entered admissions to violating the conditions of his probation. He contends that his admissions are invalid because the trial court failed to substantially comply with Juv.R. 29(D)(1). Specifically, D.G. claims that the court failed to ascertain that he understood the nature of the allegations and the consequences of his admissions. He further argues that the court failed to substantially comply with Juv.R. 29(D)(2) because it did not advise

him of, and ascertain that he understood, his right to remain silent at the adjudicatory hearing, if one were held. Because the trial court asked D.G. whether he understood the allegations and explained that admitting the complaint would result in a commitment of six months up to D.G.'s 21st birthday, the court substantially complied with Juv.R. 29(D)(1). Moreover, even though the court did not specifically mention D.G.'s right to remain silent at the hearing, the totality of the circumstances shows that D.G. was aware of that right and understood that right.

{¶ 2} D.G. additionally argues that the trial court plainly erred by failing to appoint a guardian *ad litem* to represent his interests during the probation violation proceedings. He contends that Juv.R. 4(B) and R.C. 2151.281(A) required the court to appoint a guardian *ad litem* because his interests conflicted with those of his parents. We disagree. The record does not contain any suggestion that D.G's parents held interests inconsistent with D.G.'s interests. In fact, D.G.'s mother implored the court not to commit D.G. to DYS and to allow him to return home. Because the record fails to show a potential for conflict between D.G. and his parents, the trial court did not plainly err by failing to appoint a guardian *ad litem*. Accordingly, we overrule D.G.'s two assignments of error and affirm the trial court's judgment.

I.  FACTS

{¶ 3} This case involves a consolidated appeal from two juvenile court judgments finding that D.G. violated the terms of probation previously imposed in two delinquency cases and that committed him to the Department of Youth Services (DYS).

### A. Case Number 2011DEL208

{¶ 4} On June 17, 2011, a complaint was filed that alleged D.G. was a delinquent child for committing domestic violence (case number 2011DEL0208). On June 20, 2011, the court appointed attorney Walter Bevins to act as D.G.'s counsel and guardian *ad litem*.

{¶ 5} On September 27, 2011, the magistrate adjudicated D.G. a delinquent child for committing domestic violence. On October 21, 2011, the court ordered that D.G. be committed to DYS for a minimum period of six months and a maximum period not to exceed his 21st birthday. The court suspended the commitment and placed D.G. on probation.

{¶ 6} On December 8, 2011, April 10, 2012, September 20, 2012, and October 29, 2012, D.G.'s probation officer filed notices of violation of conditions of a court order.

### B. Case Number 2012DEL0153

{¶ 7} On April 25, 2012, a complaint containing two counts of domestic violence was filed (case number 2012DEL0153). On April 26, 2012, the court

appointed attorney Bevins to act as counsel for D.G.  The court did not appoint

Bevins as guardian *ad litem*, and it did not appoint anyone else as D.G.'s guardian

*ad litem*.

{¶ 8}  On June 1, 2012, the magistrate adjudicated D.G. a delinquent child

for committing two acts of domestic violence and found that the domestic violence

acts violated the terms of probation imposed in the 2011 case.  On July 12, 2012,

the court committed D.G. to DYS for a minimum of six months and a maximum

period not to exceed his 21st birthday.  The court suspended the commitment and

placed D.G. on probation.

{¶ 9}  On September 20, 2012, and October 29, 2012, D.G.'s probation

officer filed notices of violation of conditions of a court order.

## C.  Probation Violations

{¶ 10}  On September 20, 2012, D.G.'s probation officer alleged that D.G.

violated probation in both the 2011 and 2012 cases by failing to obey all laws (a

new complaint was filed that alleged D.G. to be delinquent as a result of

committing theft, case number 2012DEL238).  On October 2, 2012, the magistrate

held a hearing regarding the probation violations.[1]  At the start of the hearing,

D.G.'s counsel stated:  "Enter admission to the violation your Honor.  Waive

---

[1] The magistrate began the hearing by observing that the matter was before her for "arraignments on violations on 2011DEL0208 and disposition on 2012DEL0238."  Although the magistrate did not specifically refer to the 2012 domestic violence case, the magistrate did refer to D.G.'s "probation on these other two charges."

reading of the violation, advisement of rights, and possible penalties."  The

magistrate explained:

> "[D.G.] the violation is basically you are on probation on these
> other two charges and the violation is * * * well basically that you
> have been convicted of a * * * theft offense that is pending disposition
> and that is a violation of your probation.  Do you understand that?
> [D.G.]  Yes I know * * * I wasn't taking my medicine and I'm
> sorry.
> [Magistrate]:  Okay.  You understand that if you admit the
> violation you are stating that it's true.?
> [D.G.]  Yes and I admit it.
> [Magistrate]:  You understand the possible dispositions which
> could include * * * imposition of the suspended commitment to
> [DYS]?
> [D.G.]:  Yes.
> [Magistrate]:  Court will accept the admission to the violation. *
> * * [A]nything else you want to tell me [D.G.]?
> [D.G.]:  No Ma'am.
> [Magistrate]:  You understand also by admitting the violation
> that means there won't be a trial.  You waive that right, you waive the
> right to remain silent[?]
> [D.G.]:  Yes.
> [Magistrate]:  And you waive your right to cross-examine any
> witnesses, okay.  You think you are ready to go home?
> [D.G.]:  I think so."

{¶ 11}  On October 9, 2012, D.G. admitted that he violated probation in the

2011 and 2012 cases.

{¶ 12}  On October 29, 2012, D.G.'s probation officer alleged that D.G.

violated probation in the 2011 and 2012 cases by failing to obey his parents,

teachers, and school administrators and by failing to attend school.  On that same

date, the magistrate held a hearing regarding the probation violations and regarding

a new delinquency complaint involving D.G.  D.G.'s counsel stated that he

"waive[d] reading of the complaint and * * * advisement of rights and possible

penalties and an admission to the violation."  The magistrate asked D.G.:

> "Okay [D.G. do] you understand the violation?
> [D.G.]  Yes I was * * * what is it called a place that will help me with * * * I don't know what it is called. [sic]
> [Magistrate]:  Do you understand the allegations of the violation?
> [D.G.]:  Yes I understand those.
> [Magistrate]:  Okay and you understand that if you admit the * * *
> [D.G.]:  Rehab, I wish to go to rehab.
> [Magistrate]:  Okay but let me; I need you to answer my questions here.
> [D.G.]:  Okay.
> [Magistrate]:  You understand that if you admit the violation there won't be a trial on that violation?
> [D.G.]  Yeah I know.
> [Magistrate]:  Okay and you understand that means you give up your right to have that trial and to cross-examine any witnesses and to call any witnesses on your own behalf do you understand that?
> [D.G.]  Yes I know.
> [Magistrate]:  Okay.  You also understand that some of these cases that you are on probation for are felonies and you could be committed to [DYS] for a minimum period of six months * * *
> [D.G.]:  Yes your Honor.
> [Magistrate]: maximum age twenty-one.  You understand that?
> [D.G.]:  Yes your honor.
> [Magistrate]:  Okay and is it your voluntary wish and desire to admit the violation?
> [D.G.]:  Yes.
> [Magistrate]:  Anyone made any threats or promises to you to get you to?
> [D.G.]:  No."

{¶ 13}  On January 4, 2013, the court held a hearing regarding the disposition for the probation violations and for the disposition in a new case.  At the conclusion of the hearing, the magistrate explained to D.G.:  "* * * [H]ow long you are at DYS here again depends on you.  * * * * They can keep you until you are twenty-one or you[] can be out of there early[--]be out of there in six months possibly."

{¶ 14}  On January 7, 2013, the court lifted the suspended commitments imposed in the 2011 and 2012 cases and ordered that D.G. be committed to DYS for a minimum period of six months and a maximum period not to exceed his 21st birthday.  In the 2012 case, the court ordered that the terms be imposed "on each charge to run consecutively."  In the 2011 case, the court ordered the term "to run consecutively," but did not specify to what it was to run consecutively.

## II.  ASSIGNMENTS OF ERROR

{¶ 15}  Appellant timely appealed the trial court's judgments and raises identical assignments of error in each case:

First Assignment of Error:

The juvenile court erred when it accepted [D.G.]'s admission because the admission was not knowing, voluntary, and intelligent.

Second Assignment of Error:

The juvenile court committed plain error when it failed to appoint a guardian *ad litem* for [D.G.], in violation of R.C. 1251.281(A) and Juv.R. 4(B).

## III.  ANALYSIS

### A.  JUV.R. 29(D)

{¶ 16}  In his first assignment of error, D.G. argues that the juvenile court did not substantially comply with Juv.R. 29(D)(1) and (2).  He argues that the court did not comply with Juv.R. 29(D)(1) because it failed to inform him of the allegations set forth in the complaint and of the consequences of an admission. D.G. contends that the court's question whether D.G. understood the allegations of the violation did not fulfill Juv.R. 29(D)(1)'s requirement to inform him of the allegations set forth in the complaint.  D.G. further asserts that the court did not explain the cumulative consequences of D.G.'s admission to the violations.  He notes that the court informed him that he could be committed to DYS for a minimum period of six months but argues that the court failed to explain that he could be ordered to serve his DYS commitments consecutively, for a total minimum commitment of eighteen months.

{¶ 17}  D.G. additionally argues that the court did not comply with Juv.R. 29(D)(2) because it failed to inform him of his right to remain silent.

#### 1.  Failure to Object to the Magistrate's Decision

{¶ 18}  D.G. did not object to the magistrate's decision or any of her alleged failures to comply with Juv.R. 29(D).  Ordinarily, we would conclude that he therefore waived the right to challenge those failures on appeal.  *In re Tabler,* 4th

Dist. No. 06CA30, 2007–Ohio–411, ¶14.  However, we previously recognized that a trial court's failure to substantially comply with Juv.R. 29(D) constitutes plain error.  *Id.* at ¶15.  *Accord In re Smith,* 5th Dist. No. 2004–CA–64, 2005–Ohio–1434, ¶14; *In re Etter*, 134 Ohio App.3d 484, 493, 731 N.E.2d 694 (1st Dist. 1998).

### 2.  Procedure for Accepting an Admission

{¶ 19}  Juv.R. 29(D) governs the procedure a juvenile court must follow before accepting an admission to a probation violation.  *In re L.A.B.,* 121 Ohio St.3d 112, 2009–Ohio–354, 902 N.E.2d 471, syllabus.   The rule states:

> (D) Initial procedure upon entry of an admission.  The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

> (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

> (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

{¶ 20}  A juvenile's admission under Juv.R. 29 is similar to an adult's guilty plea under Crim.R. 11.  *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶112, quoting *In re Smith,* 3rd Dist. No. 14–05–33, 2006–Ohio–2788, ¶13; *In re T.B.,* 8th Dist. Nos. 93422 and 93423, 2010–Ohio–523, ¶7.  Juv.R. 29 and Crim.R. 11 require trial courts to personally address the offender on the record

to ensure that the offender knowingly, voluntarily, and intelligently admits delinquency (in a juvenile matter) or guilt (in an adult criminal matter). *C.S.* at ¶112; *In re A.E.,* 5th Dist. Nos. 10–CA–107 and 10–CA–108, 2011–Ohio–4746, ¶ 48, citing *In re Flynn,* 101 Ohio App.3d 778, 781, 656 N.E.2d 737 (8th Dist.1995). The court must "conduct an on-the-record discussion to determine whether the admission is being entered knowingly and voluntarily." *Tabler* at ¶16, citing *In re West*, 128 Ohio App.3d 356, 359, 714 N.E.2d 988 (8th Dist. 1998).

{¶ 21} Thus, Juv.R. 29(D) places an affirmative duty upon the juvenile court to personally address the juvenile and determine that the juvenile understands the nature of the allegations and the consequences of entering the admission. *In re Beechler*, 115 Ohio App.3d 567, 571, 685 N.E.2d 1257 (4th Dist. 1996). Moreover, the court must "determine that the [juvenile], and not merely the attorney, understands the nature of the allegations and the consequences of entering the admission." *Id.*

{¶ 22} The best way for a juvenile court to ensure that it complies with Juv.R. 29(D) is for the court to use the language of the rule, "carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows he is waiving it by entering an admission." *In re Miller,* 119 Ohio App.3d 52, 58, 694 N.E.2d 500 (2nd Dist.1997), citing *State v. Ballard,* 66 Ohio St.2d 473, 423 N.E.2d 115 (1981). Although the Ohio

Supreme Court prefers that juvenile courts strictly comply with Juv.R. 29(D), a reviewing court may uphold an admission as voluntary as long as the juvenile court substantially complies with the rule and as long as no prejudice occurs. *C.S.* at ¶113. "'[S]ubstantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea.'" *L.A.B.* at ¶58, quoting *C.S.* at ¶113; *Tabler,* supra, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A juvenile court's failure to substantially comply with Juv.R. 29(D) constitutes prejudicial error that warrants a reversal of the judgment so that the juvenile may admit anew. *C.S.* at ¶113; *In re Jordan*, 11th Dist. No. 2001-T-0067, 2002-Ohio-2820, ¶11; *Beechler,* 115 Ohio App.3d at 572. We conduct a *de novo* review to determine whether a trial court substantially complied with Juv.R. 29(D). *In re C.K.,* 4th Dist. No. 07CA4, 2007–Ohio–3234, ¶15; *In re Elliot,* 4th Dist. Nos. 03CA65 and 03CA66, 2004–Ohio–2770, ¶17.

{¶ 23} In the case at bar, we therefore must determine whether the totality of the circumstances shows that the juvenile court substantially complied with Juv.R. 29(D)'s requirements such that D.G. subjectively understood the implications of his admission.

### 1. Juv.R.(D)(1): The Nature of the Allegations

{¶ 24} In order to substantially comply with Juv.R. 29(D)(1)'s requirement that the juvenile court ascertain that the juvenile understands the nature of the

allegations, the court need not inform the juvenile, "of every element of the charge brought against him, but he must be made aware of the 'circumstances of the crime.'" *In re Wood,* 9th Dist. No. 04CA0005–M, 2004–Ohio–6539, ¶ 18, quoting *State v. Lane,* 11th Dist. Nos. 97–A–056, 97–A–0057, 97–A–0058 (Nov. 19, 1999). *Accord In re T.N.*, 3rd Dist. No. 14-12-13, 2013-Ohio-135, ¶13. As the court explained in *In re Flynn*, 101 Ohio App.3d 778, 782, 656 N.E.2d 737 (8th Dist. 1995):

> "'In order for a trial court to determine that a defendant is making a plea with an understanding of the nature of the charge to which he is entering a plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are [*sic*] such that the trial court is warranted in making a determination that the defendant understands the charge. In other words, under some circumstances, the trial court may be justified in concluding that a defendant has drawn an understanding from sources other than the lips of the trial court.'"

*Id.*, quoting *State v. Rainey*, 3 Ohio App.3d 441, 442, 446 N.E.2d 188 (10th Dist. 1982) (citations omitted). *Accord In re Adams*, 7th Dist. Nos. 01CA237, 01CA238, and 02CA120, 2003-Ohio-4112, ¶13; *In re Hollis*, 8th Dist. No. 71134 (July 10, 1997).

{¶ 25} "When a [juvenile] is represented by counsel, there is a presumption, however, that the defense counsel did inform the [juvenile] of the nature of the charges: '"even without such express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the

offense in sufficient detail to give the [juvenile] notice of what he is being asked to admit.'"'" *In re Argo*, 5th Dist. No. CT2003-4938, 2004-Ohio-4928, ¶32, quoting *State v. Carter*, 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979), quoting *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). *Accord T.N.* at ¶13, citing *Wood* at ¶18. However, this presumption "does not eviscerate the court's affirmative duty to determine that [the juvenile], and not merely [the] attorney, underst[ands] the nature of the allegations." *T.N.* at ¶18. "Additionally, serving the complaint * * * upon a defendant also gives rise to a presumption that the accused was informed of the nature of the charge against him." *Argo* at ¶33, citing *United States v. Bousley*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998).

{¶ 26} In the case at bar, the totality of the circumstances demonstrates that the juvenile court substantially complied with Juv.R. 29(D)(1)'s requirement to ascertain that D.G. understood the nature of the allegations. Counsel represented D.G., and D.G.'s counsel was served with copies of the notices of violation of court order. The notice filed in the 2011 case alleged:

> "[D.G.] left the home without permission on October 25, 2012 and did not return. It is believed that [D.G.] was placed in the Ross County Jail, after being picked up by RCSD for Disorderly Intoxication. It is reported that [D.G.] lied and said he was his older brother * * * who is 19 years of age. [D.G.] was also reportedly picked up by CPD for shoplifting from Family Dollar. * * * *
> [D.G.] did not attend school on Friday, October 26, 2012. He did not have a valid medical excuse."

{¶ 27} D.G. received service of the violation summonses, which informed him that he violated the following conditions of probation: "1. You will obey the reasonable and proper orders of your parents, teachers, and school administrators[; and] 2. You will attend school regularly, when in session, with no absences or tardiness, unless with a valid medical excuse."

{¶ 28} Under the foregoing circumstances, a presumption arises that D.G. was informed of the nature of the allegations. *T.N., supra*; *Argo, supra*. Moreover, the court asked D.G. whether he understood the allegations. D.G. responded affirmatively. Although the court may not have explained the nature of the probation violations in exhaustive detail, it was not required to do so. *Cf. In re D.L.*, 4th Dist. No. 09CA26, 2009-Ohio-5294, ¶14 ("While the court may not have precisely detailed all of the facts that constituted the delinquency charge, nothing in Juv.R. 29(D) requires that it do so."). While we find it preferable for the court to at least summarize the nature of the allegations—instead of simply asking the juvenile whether he "understands the nature of the allegations"—under the totality of the circumstances present in the case at bar, we do not believe that the court's failure to do so demonstrated lack of substantial compliance with Juv.R. 29(D)(1) or constituted prejudicial error. The October 29, 2012 probation violation hearing was not D.G.'s first time in court. Not even one month before, on October 2, he had admitted violating his probation. He also had been before the court on two

other probation violations. D.G. had experience with the process and with the meaning of a probation violation. Thus, we find it disingenuous for D.G. to assert—after his fourth time before the court on a probation violation—that he did not subjectively understand the nature of the allegations that he violated probation.

{¶ 29} However, we caution the juvenile court that the somewhat cursory colloquy it engaged in with D.G. regarding his understanding of the allegations may not suffice under all circumstances. While not always necessary—but certainly easy—the best practice to ensure compliance with Juv.R. 29(D)(1) and to avoid the potential for a reversal on appeal would be to read the allegations to the juvenile and then to ask whether the juvenile understands the nature of those allegations.

### 2. Juv.R. 29(D)(1): Consequences of Admission

{¶ 30} D.G. further argues that the trial court failed to substantially comply with Juv.R. 29(D)(1) because it failed to inform him that the court could impose the DYS commitments consecutively to one another.

{¶ 31} Unlike Crim.R. 11(C)(2), which requires a trial court to personally address a defendant at a plea hearing regarding "the maximum penalty involved," Juv.R. 29(D)(1) does not require a juvenile court to inform a juvenile of the maximum commitment involved. *In re A.V.*, 8th Dist. No. 98339, 2013-Ohio-264, ¶10. Nevertheless, "[s]everal Ohio appellate courts have recognized that although

Juv.R. 29(D) does not expressly require the court to inform a juvenile of the maximum penalty, it does require the court to convey the consequences of the juvenile's admission." *In re Feaster,* 9th Dist. No. 25395, 2011–Ohio–4222, ¶ 9. Thus, courts have determined that a juvenile court does not substantially comply with Juv.R. 29(D) if it completely fails to inform the juvenile of the consequences of the juvenile's admission. *A.V.* at ¶15 (court merely informed juvenile that it "could impose the stayed commitment to [ODYS]" and did not advise juvenile of specific commitment time period—that she could be committed to DYS for a term of six months up until her 21st birthday); *In re Keeling,* 3rd Dist. No. 1–09–51, 2010–Ohio–1713, ¶18; *In re Hendrickson,* 114 Ohio App.3d 290, 293, 683 N.E.2d 76 (2nd Dist. 1996); *Beechler,* 115 Ohio App.3d at 572.

{¶ 32} In the case at bar, the court informed D.G. of the consequences of his admission. The court explained that it could order him committed to DYS for a minimum period of six months and up to his 21st birthday. At the October 29, 2012 hearing, the magistrate stated: "You also understand that * * * you could be committed to [DYS] for a minimum period of six months * * * [to a m]aximum [of] age twenty-one." D.G. stated that he understood.

{¶ 33} Although D.G. contends Juv.R. 29(D)(1) required the court to further advise him that it could consecutively impose the suspended commitments resulting from the probation violations, nothing in Juv.R. 29(D)(1) required it to do

so. *In re A.E.*, 5th Dist. Nos. 10CA107 and 10CA108, 2011-Ohio-4746, ¶50; *In re S.H.,* Montgomery App. No. 20107, 2004–Ohio–3779, ¶10. Neither the United States Constitution nor the Ohio Constitution requires a juvenile court to inform the juvenile whether commitments imposed for separate delinquent acts will run consecutively or concurrently. *See State v. Johnson,* 40 Ohio St.3d 130, 133, 532 N.E.2d 1295 (1988) (construing comparable Crim.R. 11). Thus, a juvenile court's failure to inform a juvenile who admits multiple delinquent acts that the court may order the juvenile to serve any commitments imposed consecutively, rather than concurrently, is not a violation of Juv.R. 29(D)(1), and does not render the admission invalid. *Id.* at syllabus. Instead, the court need only inform the juvenile of the maximum penalty for each delinquent act. *S.H.* at ¶10. The court need not explain that the maximum penalty for separate delinquent acts may run consecutively to another. *Id.* Furthermore, Juv.R. 29(D)(1) does not require the juvenile court to calculate the cumulative minimum or maximum potential penalties that it may impose for each delinquent act and then inform the juvenile of the cumulative minimum or maximum potential penalties. See *Johnson*, 40 Ohio St.3d at 133 (explaining the analogous Crim.R. 11 requirement to inform offender of "the maximum penalty" and holding that the court need advise an offender of a single penalty for a single offense, not the cumulative "total of all sentences

received for all charges in which a criminal defendant may answer in a single proceeding").

{¶ 34} Consequently, we disagree with D.G. that the juvenile court failed to substantially comply with Juv.R. 29(D)(1) by failing to inform him that it could order D.G. to consecutively serve the suspended commitments imposed for each probation violation.[2]

### 3. Juv.R. 29(D)(2): Right to Remain Silent

{¶ 35} D.G. next asserts that the juvenile court prejudicially erred when it failed to ensure that he understood that by admitting the probation violations, he waived his right to remain silent.

{¶ 36} Juv.R. 29(D)(2) prohibits a court from accepting an admission without determining that the juvenile "understands that by entering an admission the [juvenile] is waiving the right * * * to remain silent * * *."

{¶ 37} In the case at bar, we agree with D.G. that at the October 29, 2012 hearing, the juvenile court completely omitted any discussion concerning D.G.'s right to remain silent and did not ask him whether he understood that his admission would waive that right. However, we do not agree with D.G. that the court's omission prejudiced D.G. As we noted earlier, D.G. had been before the juvenile court several times before and had previously admitted to probation violations.

---

[2] We observe that at the disposition hearing, the court advised D.G. that he could be released from DYS as soon as six months from the start of his commitment. This statement seems to conflict with its judgment entries that ordered the commitments to be served consecutively.

Thus, he was familiar with the process. Moreover, at a probation violation hearing held just a few weeks earlier, the court had informed D.G. of his right to remain silent and that he would waive that right by entering an admission. The magistrate stated: "You understand also by admitting the violation that means there won't be a trial. You waive that right, you waive the right to remain silent." D.G. responded "yes."

{¶ 38} *Argo, supra*, involved a similar situation in which the juvenile court failed to inform the juvenile of one of the rights specified in Juv.R. 29(D). In *Argo*, the court failed to inform the juvenile of the right to present evidence at the adjudicatory hearing. The court nonetheless upheld the juvenile's admission. In rejecting the juvenile's argument that the court's failure to mention the right to present evidence at the adjudicatory hearing, the court explained:

> "In *Vonn,* supra, the Court noted '[t]he record shows that four times either Vonn or his counsel affirmed that Vonn had heard or read a statement of his rights and understood what they were. Because there are circumstances in which defendants may be presumed to recall information provided to them prior to the plea proceeding, *cf. Bousley v. United States,* 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (a defendant with a copy of his indictment before pleading guilty is presumed to know the nature of the charge against him), the record of Vonn's initial appearance and arraignment is relevant in fact, and well within the Advisory Committee's understanding of "other portions ... of the limited record" that should be open to consideration. It may be considered here.'" Id. at 75, 122 S.Ct. at 1055."

*Id.* at ¶39.

{¶ 39} The *Argo* court then observed that the juvenile previously had signed, in two separate delinquency cases, a form that listed his right to present evidence and stated that the juvenile understood that right. The court examined the totality of the circumstances presented in the record and determined that on previous occasions, the court had adequately informed the juvenile of his right to present evidence at the adjudicatory hearing. Id. at ¶¶40-47. The court concluded that the circumstances showed that the juvenile understood that right and that his admission would waive that right. Id. at ¶47.

{¶ 40} Similarly, in the case at bar, even though the court failed to mention D.G.'s right to remain silent at the October 29, 2012 hearing, it had mentioned that same right just a few weeks earlier at a prior probation violation hearing at which D.G. admitted the violation. Consequently, the totality of the circumstances shows that the court had adequately informed D.G. of his right to remain silent and that D.G. understood that his admission waived his right to remain silent. The court's failure to explicitly mention one of the three rights set forth in Juv.R. 29(D)(2) does not, under the circumstances present in the case at bar, render D.G.'s admission invalid.

{¶ 41} Accordingly, based upon the foregoing reasons, we overrule D.G.'s first assignment of error.

### B.  Guardian *Ad Litem*

{¶ 42} In his second assignment of error, D.G. argues that the trial court plainly erred by failing to appoint a guardian *ad litem* to represent his interests in the 2012 case. He asserts that the court should have appointed a guardian *ad litem* to represent his interests because the record shows that an actual conflict existed between D.G. and his parents.

{¶ 43} D.G. further argues that although the juvenile court appointed attorney Bevins to act as both counsel and guardian *ad litem* in the 2011 case, Bevins never acted as D.G.'s guardian *ad litem* during the probation violation proceedings and thus the court should have appointed a new guardian *ad litem* to represent his interests regarding the probation violations filed in the 2011 case.

   1. Failure to Request Guardian *Ad Litem* or to Object to Trial Court's Failure to
                    Appoint Guardian *Ad Litem*

{¶ 44} Initially, we note that D.G. did not request the court to appoint a guardian *ad litem* in the 2012 case. D.G. also did not object to the court's failure to appoint a guardian *ad litem* in the 2012 case. He further did not object to attorney Bevins's dual role in the 2011 case or raise any suggestion that Bevins failed to act as his guardian *ad litem*.

{¶ 45} Some courts have held that a juvenile need not request a trial court to appoint a guardian *ad litem* or object to a court's failure to appoint one when a mandatory duty to do so exists. *In re Dennis*, 11th Dist. No. 2006-A-0040, 2007-Ohio-2432, ¶29. Other courts have reviewed an appellant's failure to request the

trial court to appoint a guardian *ad litem* or to object using a plain error analysis. *In re M.T.*, 6th Dist. No. L-09-1197, 2009-Ohio-6674, ¶¶14-15; *In re A.K.*, 9th Dist. No. 09CA0025-M, 2009-Ohio-4941, ¶8, reversed on other grounds sub nom *In re Cases Held for the Decision in D.J.S.*, 130 Ohio St.3d 253, 2011-Ohio-5349, 957 N.E.2d 288; *In re Smith*, 3rd Dist. No. 14-05-33, 2006-Ohio-2788, ¶35; *In re McHugh Children*, 5th Dist. No. 2004CA00091, 2005-Ohio-2345, ¶37. In *In re Slider*, 160 Ohio App.3d 159, 2005-Ohio-, 826 N.E.2d 356 (4th Dist.), we briefly mentioned the plain error doctrine but did not explicitly apply it. We stated:

> "Ordinarily, rights are deemed waived it they are not raised before the trial court and will be enforced upon appeal only if the error constitutes plain error. However, this court has previously reversed a finding of delinquency when the trial court failed to appoint a guardian *ad litem* or at least inquire further whether a guardian *ad litem* was necessary, even though an objection was not made."

*Id.* at ¶11 (citations omitted). *Cf. In re A.G.B.*, 173 Ohio App.3d 263, 2007-Ohio-4753, 878 N.E.2d 49, ¶15 (plurality opinion, with one judge concurring in judgment only and one judge dissenting). Thus, based upon our *Slider* decision, D.G.'s failure to object or to request a guardian *ad litem* does not preclude appellate review.

### 2. Appointment of Guardian *Ad Litem*

{¶ 46} A guardian *ad litem* is a "person appointed to protect the interests of a party in a juvenile court proceeding." Juv.R. 2(O). "The role of guardian *ad*

*litem* is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the child's best interest." *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985).

{¶ 47} Both R.C. 2151.281(A) and Juv.R. 4(B) require a juvenile court to appoint a guardian *ad litem* in certain circumstances. R.C. 2151.281(A) provides:

> The court shall appoint a guardian *ad litem* to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:
> (1) The child has no parent, guardian, or legal custodian.
> (2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.

Juv.R. 4(B) provides:

> The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
> (1) The child has no parents, guardians, or legal custodian; [or]
> (2) The interests of the child and the interests of the parent may conflict * * *.

{¶ 48} The rule requires a juvenile court to appoint a guardian *ad litem* upon the possibility of conflict, but the statute requires the juvenile court to appoint a guardian *ad litem* if the court determines that a conflict indeed exists. Both the statute and the rule are mandatory, and a court's failure to appoint a guardian *ad litem* when required constitutes reversible error. *In re S.B.,* 183 Ohio App.3d 300, 2009-Ohio-3619, 916 N.E.2d 110 (10th Dist.), ¶12, citing *In re K.J.F.,* 2nd Dist. No. 2003–CA–41, 2004-Ohio-263, ¶23, citing *In re Sappington,* 123 Ohio App.3d

448, 452, 704 N.E.2d 339 (2nd Dist.1997), and *In re Spradlin,* 140 Ohio App.3d 402, 406, 747 N.E.2d 877 (4th Dist. 2000).

{¶ 49} "[T]he juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child." *Sappington*, 123 Ohio App.3d at 453–454, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). We thus review the trial court's determination regarding whether a potential conflict of interest exists between the parent and child for an abuse of discretion. *In re Wilson*, 4th Dist. No. 04CA26, 2004-Ohio-7276, ¶21; *Spradlin*, 140 Ohio App.3d at 407; *Sappington*, 123 Ohio App.3d at 453-454. *But, see, In re A.K.*, 9th Dist. No. 26291, 2012-Ohio-4430, ¶12; *In re C.W.*, 4th Dist. No. 10CA892, 2010-Ohio-5633, ¶9 (stating that whether the court possessed a mandatory duty to appoint a guardian *ad litem* is a question of law). The question is whether the record "reveals a strong enough possibility of conflict of interest between parent and child to show that the juvenile court abused its discretion" by not appointing a guardian *ad litem. Sappington*, 123 Ohio App.3d at 454.

{¶ 50} A "colorable claim of conflict" frequently arises in a delinquency proceeding when the parent speaks against the child's penal interests or files delinquency charges against the child. *In re Bostwick*, 4th Dist. No., 2005-Ohio-5123, ¶¶8-9, citing *In re Howard*, 119 Ohio App.3d 201, 207, 695 N.E.2d 1 (1st

Dist. 1997).  The potential for conflict results because the parent's interests in seeking the juvenile court's assistance may be wholly inconsistent with the child's interests.  *Sappington*, 123 Ohio App.3d at 454.  Thus, when a parent or legal guardian instigates a delinquency proceeding or speaks out against the child's penal interests, the juvenile court ordinarily must conduct "a 'thorough inquiry' * * * to determine whether a conflict of interest exists such that the court must appoint a guardian *ad litem*."  *Bostwick* at ¶8.  However, courts have been unwilling to adopt a bright-line rule that would require the appointment of a guardian *ad litem* in every case in which a child's parents or legal guardians initiate a delinquency proceeding against their child.  *Howard*, 119 Ohio App.3d at 207.  Instead, the courts have examined the record to determine whether the parent or legal guardian expressed any interest inconsistent with the child's interests.

{¶ 51} For instance, courts have found no potential for conflict when the victim of the child's delinquent act was a family member and when neither parent (nor a legal guardian) spoke against the child's penal interests or expressed a desire inconsistent with the child's interests.  In *In re Wilkins*, 3rd Dist. No. 5-96-1 (June 26, 1996), the court found no conflict of interest between the father and the child even though the delinquency charge involved the child hitting his father.  In reaching its decision, the court observed that the father did not attempt to persuade

the court to act in any manner inconsistent with the child's interests. The court

explained:

> "Timothy's father did not attempt to persuade the court in any manner that would be consistent with an understanding that he was not acting in Timothy's best interests. Indeed, the record reveals just the opposite; that Timothy's father was acting in Timothy's best interests. When the court suggested an institution remedial in nature, as opposed to the harsher environment of a DYS facility, Timothy's father did not object or demand that Timothy be placed in the latter facility. Timothy and his father did not argue or have any contentious words at hearing. In fact, Timothy's father seemed most concerned with the court understanding and helping Timothy with his substance abuse addiction."

{¶ 52} Similarly, in *In re A.K.*, 9th Dist. No. 09CA0025-M, 2009-Ohio-

4941, *supra*, the court determined that a potential for conflict did not exist even

when the child's parents called law enforcement after the child's sister alleged that

the child had sexually assaulted her. In concluding that a potential for conflict did

not exist, the court observed that the child's parents did not testify against him and

did not recommend that he be committed. *Id.* at ¶11. Moreover, the child's

parents "appeared with him at his adjudication and disposition hearings and, more

than once, expressed concern over the length and severity of the disposition that

[the child] might receive." *Id.*

{¶ 53} In contrast, we have found that a trial court abused its discretion by

failing to appoint a guardian *ad litem*—or by failing to inquire further into whether

a conflict of interest existed sufficient to warrant the court in appointing a guardian

*ad litem*—when the facts showed that the child's legal guardians' interests were not aligned with the child's interests. In *Slider*, for example, we determined that a sufficient potential for conflict between the child and the child's legal guardians existed when the child's legal guardians were unwilling to hire an attorney for the child, when they refused to take the child home with them because they feared for their daughter's safety, and when they requested the trial court to institutionalize the child. *In re Slider*, 160 Ohio App.3d 159, 2005-Ohio-1457, 826 N.E.2d 356 (4th Dist.), ¶12. *Accord In re Wilson* at ¶18 (concluding that trial court abused its discretion by failing to appoint guardian *ad litem* when the child's step-brother was the victim, the child's mother testified for the prosecution, the child's mother and father recommended that the child be committed to DYS, and the child previously victimized other family members); *Sappington*, 123 Ohio App.3d at 454–455 (determining that the juvenile court abused its discretion by failing to appoint a guardian *ad litem* for the child when the child's parents previously filed domestic violence charges against the child, had sought to place the child out of the home, and had convinced the minor that he did not need an attorney); *In re K.J.F.*, *supra* (concluding that the juvenile court abused its discretion by failing to appoint a guardian *ad litem* for the child's delinquency-related proceedings, which included his original adjudication and the subsequent revocation of probation for the rape of his half-sister, when the child's step-father stated that the family did not want the

child to return to their home where the victim lived and when the child's mother informed the court that she "did not feel [she] could make choices in [the child's] best interest").

{¶ 54} The case at bar bears more similarity to *A.K.* and *Wilkins* than the *Slider/Sappington* line of cases. Unlike the parents in *Slider* and *Sappington*, D.G.'s parents did not request the court to institutionalize D.G. Instead, D.G.'s mother wrote a heart-felt note to the court requesting that the court not commit her child to DYS and imploring the court to return D.G. to his home. At no point during the hearing did either D.G.'s mother or father speak against his penal interest. Thus, even though the charges involved domestic violence against D.G.'s family members, the record does not demonstrate that a potential for conflict existed so as to warrant the court in appointing a guardian *ad litem.* Consequently, we disagree with D.G. that the trial court plainly erred by failing to appoint a guardian *ad litem* to represent him during the probation violation proceedings in the 2012 case.

{¶ 55} D.G. further asserts that the trial court should have appointed a guardian *ad litem* to represent him during the probation violation proceedings in the 2011 case. However, on June 20, 2011, the court appointed attorney Bevins to act as counsel and guardian *ad litem* for D.G. Although D.G. claims that Bevins failed to act as his guardian *ad litem*, he has not raised Bevins's alleged failure as a

separate assignment of error and also has not asserted that Bevins's roles as counsel and guardian *ad litem* conflicted.[3] Therefore, we do not consider either issue. Nor do we express any opinion regarding the merits of either argument. Nothing in the record affirmatively demonstrates that attorney Bevins failed to act as D.G.'s guardian *ad litem* and counsel throughout the probation violation proceedings filed in the 2011 case.

**{¶ 56}** Assuming for the sake of argument that the court possessed some duty to consider re-appointing a guardian *ad litem* for D.G. upon the filing of the October 29, 2012 probation violation, we do not believe that the court abused its discretion by failing to re-appoint a guardian *ad litem*. For the same reasons that we rejected D.G.'s argument that the court abused its discretion and plainly erred by failing to appoint a guardian *ad litem* in the 2012 case, we reject his argument that the trial court plainly erred by failing to appoint a guardian *ad litem* to represent him during the probation violation proceedings filed in the 2011 case. As we determined above, the record does not demonstrate any potential conflict between D.G. and his parents.

**{¶ 57}** Accordingly, based upon the foregoing reasons, we overrule D.G.'s second assignment of error and affirm the trial court's judgment.

---

[3] R.C. 2151.281(H) and Juv.R. 4(C)(2) allow the trial court to appoint a single attorney to serve as both guardian *ad litem* and attorney for the child. Nonetheless, "the duty of a lawyer to his client and the duty of a guardian *ad litem* to his ward are not always identical and, in fact, may conflict." *In re Baby Girl Baxter,* 17 Ohio St.3d at 232. The conflict typically arises when the guardian *ad litem*'s determination of the child's best interest differs from the child's wishes. *Id.*

**JUDGMENT AFFIRMED.**

Harsha, J., Dissenting:

{¶ 58}  To me there is an important distinction between a juvenile understanding the nature of a probation violation and understanding the factual allegations that form the basis for a specific probation violation.  Prior experience with the juvenile court may provide the former but not the latter.  Because the court failed to substantially comply with Juv.R. 29(D)(1), I dissent.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J.:   Concurs in Judgment and Opinion.
Harsha, J.: Dissents with Dissenting Opinion.


For the Court,

BY:   _____
        Matthew W. McFarland
        Presiding Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**